# EXHIBIT 6

Ground Lease No. B-224

EXHIBIT 6

Lease No. B-224

RECEIVED
2000 JA 27 PM 1:18
LAND TITLES & RECORDS
BUR INDIAN AFFRS
ALBUQ N MEX

OCT 1 4 19 PM '99

# GROUND LEASE

## WASHOE DEVELOPMENT ENTERPRISE

TO

## HOBO HOT SPRINGS SELF STORAGE, L.L.C.
## A LIMITED LIABILITY COMPANY

HOT SPRINGS ROAD #2

September 30th, 1999

672-003-00

**TABLE OF CONTENTS**


| | Page No. |
|---|---|
| ARTICLE I | |
| Demise of Leased Land | 1 |
| 1.01 Leased Land | 1 |
| ARTICLE II | |
| Lease Term | 2 |
| 2.01 Fixed Commencement and Expiration Dates | 2 |
| 2.02 Lessee's Option to Extend | 2 |
| 2.03 Lessor's Option to Purchase | 3 |
| 2.04 Lessor's Obligation to Purchase | 5 |
| ARTICLE III | |
| Consideration and Rent | 6 |
| 3.01 Consideration | 6 |
| 3.02 Monthly Rent | 6 |
| 3.03 Percentage Rent | 7 |
| 3.04 Books and Records | 8 |
| 3.05 Net Lease | 9 |
| 3.06 Covenant to Operate | 9 |
| ARTICLE IV | |
| Use of Premises | 10 |
| 4.01 Primary Use | 10 |
| 4.02 Limits on Use | 10 |
| 4.03 Indemnity for Violation of Law | 12 |
| 4.04 Signs | 11 |
| ARTICLE V | |
| Construction by Lessee | 12 |
| 5.01 Lessee's Right to Build -- General Conditions | 12 |
| 5.02 Approvals | 13 |
| 5.03 Buildings to be Within Demised Premises | 13 |
| 5.04 Due Diligence | 14 |
| 5.05 Prerequisites to the Start of Construction | 14 |
| 5.06 Lessee's Ownership of Improvements and Fixtures | 17 |
| 5.07 Right to Cancel | 18 |
| ARTICLE VI | |
| Taxes | 18 |
| 6.01 Real Property Improvements | 18 |
| 6.02 Personal Property | 18 |
| 6.03 Sales and Use and Business Licensing | 19 |
| 6.04 Default for Non-payment | 19 |
| ARTICLE VII | |
| Insurance to be Maintained by Lessee | 19 |
| 7.01 Hazard Insurance | 19 |


672-003-00

**TABLE OF CONTENTS CONTINUED**


| | | Page No. |
|---|---|---|
| 7.02 | Liability Insurance . . . . . . | 20 |
| 7.03 | Workmen's Compensation Insurance . . . | 21 |
| 7.04 | Deposit of Policies . . . . . . | 21 |
| 7.05 | Consent to Blanket Insurance Policy . . . | 22 |
| 7.06 | Increased Level of Fire Insurance . . | 23 |
| 7.07 | Indemnification . . . | 24 |
| ARTICLE VIII | | |
| | Condemnation of the Property . . . . . . . | 25 |
| 8.01 | Division of Proceeds . . . . . . | 25 |
| 8.02 | Partial Taking . . . . . . . | 26 |
| 8.03 | Controversies to be Resolved by Arbitration . | 27 |
| 8.04 | Temporary Taking . . . . . . . | 27 |
| ARTICLE IX | | |
| | Damage or Destruction of Improvements . . . . . | 28 |
| 9.01 | Lessee's Absolute Duty to Repair . . . | 28 |
| 9.02 | No Abatement of Rent . . . . . . | 28 |
| ARTICLE X | | |
| | Disbursement of Insurance Proceeds and Other Funds by Leasehold Mortgagee or Other Depository . . . | 29 |
| 10.01 | Depository . . . . . . . . | 29 |
| 10.02 | Disbursement in Stage Payments . . . | 29 |
| 10.03 | Depository's Fees and Expenses . . . | 30 |
| 10.04 | Nonliability of Depository . . . . | 30 |
| ARTICLE XI | | |
| | Changes and Alterations by Lessee . . . . . . | 30 |
| 11.01 | Conditions to be Observed by Lessee . . | 30 |
| 11.02 | Lessee to Secure all Necessary Approvals . | 31 |
| 11.03 | Work to be Supervised by Architect or Engineer, Lessor's Approval . . . | 31 |
| 11.04 | Value and Utility of Improvements Not to be Impaired . . . . . . | 31 |
| 11.05 | Work to be Done in Workmanlike Manner; Insurance . . . . . . . | 32 |
| 11.06 | Bonds Required . . . . . . . | 32 |
| 11.07 | Rent Deposit . . . . . . . . | 33 |
| ARTICLE XII | | |
| | Assignment, Subletting and Mortgaging . . . . . | 35 |
| 12.01 | Assignment by Lessee . . . . . . | 35 |
| 12.02 | Mortgage of Leasehold Interest . . . | 35 |
| 12.03 | Delivery of New Lease to Mortgagee . . | 38 |
| 12.04 | Notice of Arbitration; Right to Participate | 39 |
| 12.05 | Subletting by Lessee . . . . . . | 39 |


672-003-00

## TABLE OF CONTENTS CONTINUED


| | | Page No. |
|---|---|---|
| ARTICLE XIII | | |
| Default and Remedies | | 40 |
| 13.01 | Events of Default | 40 |
| 13.02 | Notice as Precondition to Lessor's Remedies | 42 |
| 13.03 | Lessee's Right to Cure Defaults | 42 |
| 13.04 | Rights of Subtenants; Non-disturbance Clause | 42 |
| 13.05 | Lessor's Remedies | 43 |
| ARTICLE XIV | | |
| Surrender and Removal | | 46 |
| 14.01 | Surrender of Possession | 46 |
| 14.02 | Lessee's Quitclaim | 47 |
| ARTICLE XV | | |
| Lessor's General Protective Provisions | | 47 |
| 15.01 | Lessor's Right of Entry and Inspection | 47 |
| 15.02 | Lessor's Right to Cure Default | 47 |
| 15.03 | Accord and Satisfaction | 48 |
| 15.04 | Transfer by Lessor -- Release From Liability | 48 |
| 15.05 | Reservation of Minerals | 49 |
| ARTICLE XVI | | |
| General Provisions | | 49 |
| 16.01 | Conditions and Covenants | 49 |
| 16.02 | Waiver of Breach | 49 |
| 16.03 | Time of the Essence | 50 |
| 16.04 | Computation of Time | 50 |
| 16.05 | Unavoidable Delay --Force Majeure | 50 |
| 16.06 | Successors in Interest | 50 |
| 16.07 | Entire Agreement | 51 |
| 16.08 | Partial Invalidity | 51 |
| 16.09 | Relationship of Parties | 51 |
| 16.10 | Interpretation and Definitions | 51 |
| | a. Number and Gender | 51 |
| | b. Mandatory and Permissive | 51 |
| | c. Captions | 52 |
| | d. Term Includes Extensions | 52 |
| | e. Land and Premises | 52 |
| | f. Parties | 52 |
| | g. Sublessee | 52 |
| | h. Buildings | 52 |
| | i. Undertaking | 52 |
| | j. Assignment | 52 |
| | k. Leasehold Mortgage | 53 |
| | l. Leasehold Mortgagee | 53 |


672-003-00

**TABLE OF CONTENTS CONTINUED**


**Page No.**

16.11 Attorney's Fees . . . . . . . 53
16.12 Interest . . . . . . . 53
16.13 Modification . . . . . . . 54
16.14 Delivery of Rent and Notices - Method and Time . 54
16.15 Federal Trust Responsibility . . . 55
16.16 Lessor's Assistance to Lessee's Operations . 55
16.17 Employment of Tribal Members . . . 56
16.18 Tax Benefits for Operating on Tribal Lands. 56

ARTICLE XVII
Arbitration . . . . . . . . . . . 56
17.01 American Arbitration Association . . . 56

ARTICLE XVIII
Execution, Recording and Incorporation by Reference . 57
18.01 Recording . . . . . . . 57
18.02 Counterparts . . . . . . . 57
18.03 Execution . . . . . . . 58

Lease Approval Pursuant to 25 CFR, Part 162 . . . . . 59

EXHIBIT A

EXHIBIT B

EXHIBIT C

EXHIBIT D

EXHIBIT E

EXHIBIT F

EXHIBIT G


672-003-00

# GROUND LEASE

**THIS GROUND LEASE,** hereinafter referred to as "Lease", is made and entered into this 30th day of September, 1999, by and between the WASHOE DEVELOPMENT ENTERPRISE, an enterprise chartered by the WASHOE TRIBE OF NEVADA AND CALIFORNIA, hereinafter referred to as "Lessor", and HOBO HOT SPRINGS SELF STORAGE, L.L.C., a Nevada limited liability company, hereinafter referred to as "Lessee", in accordance with the provisions of Title 25, Code of Federal Regulations, Part 162, and with the approval of the Secretary of the United States Department of the Interior, hereinafter referred to as "Secretary", or his authorized representative acting under delegated authority, for the purpose of granting to Lessee long-term leasehold rights for the construction, development and operation of a rental storage facility consisting of individual units and spaces within and without enclosures for lease to the public, hereinafter referred to as an Self Storage and R.V. Storage Facility.

672-003-00

## ARTICLE I

## DEMISE OF LEASED LAND

1.01: **Leased Land**

Lessor, for and in consideration of the rents, covenants, and conditions herein contained to be kept, performed, and observed by Lessee, does lease and demise to Lessee, subject to all matters of record, and Lessee does rent and accept from Lessor, that certain tract of tribal land, held in trust for the Washoe Tribe of Nevada and California by the United States Department of Interior, Bureau of Indian Affairs, located near the intersection of Plymouth Road and Highway 395 in Douglas County, Nevada, comprising 22.77 acres, more or less, and more particularly described in Exhibit "A", attached hereto and by this reference incorporated herein. Said real property is hereinafter referred to from time to time as "Hot

Springs Road #2," "Premises," "Demised Premises," and "Leased Land."

ARTICLE II

LEASE TERM

2.01: **Fixed Commencement and Expiration Dates**

This Lease shall be for a term of fifteen (15) years, referred to as "Lease Term," commencing on the day of approval by the Superintendent of the Western Nevada Agency of the Bureau of Indian Affairs, as evidenced and dated on page __ of this Lease, and expiring one day prior to the fifteenth anniversary of that date.

2.02: **Lessee's Option to Extend**

Lessee may, at Lessee's option, extend the original term of this Lease for one additional period of twenty-five (25) years, subject to all provisions of this Lease, including but not limited to provisions for adjustments to and variations in rent. Lessee may, at Lessee's election, assign this option at any time and from time to time to any one or more leasehold mortgagees permitted by this Lease, and may give any such mortgagee, with or without such assignment, power of attorney to exercise such option. After exercise of the option to extend, all references to the term shall be considered to mean the term as extended, and all references to termination or to the end of the term shall be considered to mean the termination or end of the term as extended. Lessee's right to the option is subject to:

a. The following conditions precedent:

(i) The Lease shall be in effect at the time notice of exercise is given and on the last day of the term.

(ii) Lessee shall not be in uncured default under any provision of this Lease at the time notice of exercise is given or on the last day of the term.

b. Compliance with the following procedure for exercising the option:

672-003-00

(i) At least one hundred and twenty (120) days before the last day of the term, Lessee shall give Lessor notice in writing irrevocably exercising the option.

(ii) In lieu of executing a new lease, each party shall, at the request of the other, execute a memorandum, in recordable form, acknowledging the fact that the option has been exercised and otherwise complying with the requirements of law for an effective memorandum or abstract of lease.

**2.03: <u>Lessor's Option to Purchase</u>**

Prior to Lessor exercising the option granted in §2.03 of that certain Ground Lease by and between the Washoe Development Enterprise and Carson Valley/Tahoe Self-Storage, L.L.C., for Plymouth Road #1, dated August 28, 1996, and approved December 18, 1996, Lessor, must first purchase, if it elects to do so, from Lessee, or its assigns, all buildings, fixtures, and other improvements located on the Premises covered by this Lease, together with any inventory, machinery, equipment, furniture, supplies and all other tangible personal property used in connection with, or for the operation of, the Self Storage and R.V. Storage Facility developed by Lessee on the Leased Premises, along with all accounts receivable, contracts, agreements, and other intangible property, including trade names and good will, in addition to any debts, liabilities or obligations, contingent or otherwise, of the Self Storage and R.V. Storage Facility, subject to compliance with the following procedures:

a. No later than ninety (90) days before, but no earlier than 180 days before, the expiration of the tenth (10th) year of the primary term of this Lease, or at least ninety (90) days before but no more than 180 days before, the expiration of any fifth (5th) year thereafter, Lessor shall give Lessee, or its assigns, notice in writing of Lessor's intention to consider purchasing the assets and liabilities of the Self Storage and R.V. Storage Facility which is the subject of this Lease.

672-003-00

b. Within thirty (30) days after serving the notice of its intention to consider purchasing the assets and liabilities of the subject business, Lessor and Lessee shall separately designate an appraiser who shall together jointly designate a third appraiser. The failure of either the Lessor or Lessee to appoint an appraiser within the time allowed shall be deemed equivalent to appointing the appraiser appointed by the other party. If, within sixty (60) days after the appointment of all appraisers, a majority of appraisers concur on the value of the business, that appraisal shall be binding and conclusive. If a majority of the appraisers do not concur within that period, the determination of the appraiser whose appraisal is neither highest nor lowest shall be binding and conclusive. The Lessor shall bear the expense of all appraisers. The agreed upon basis for valuation shall be the direct capitalization method based upon the stream of expected net income from the property calculated on the last three years' stabilized expense and income statements less the concurrent appraised value of those contiguous Tribal lands actually developed at the time in accordance with plans approved under Article V. Payments made by Lessee to Lessor under this Lease shall not be included in the list of stabilized expenses for determining the stream of expected income.

672-003-00

c. Lessee shall assist all such appraisers fully and completely in their efforts to evaluate the business, including but not limited to, granting full and complete access to any and all facilities, records, accounts and programs incidental to common practices for evaluation in the area. Upon completion of the appraisals and submission to Lessor of comprehensive written reports by the appraisers, Lessor shall present Lessee with complete copies of all three appraisal reports.

d. Should Lessor desire to purchase the subject business, Lessor shall notify Lessee of its intention to exercise its option by delivering to Lessee, within thirty (30) days of the date of

submission to Lessor of the last appraisal report, unless the parties agree to a later date, the full purchase price. In the alternative, Lessor may tender to Lessee an amount equal to thirty (30) percent of the purchase price with a properly executed promissory note in the same form as Exhibit "B" secured by the assets of the business and evidencing the following terms: the balance owing in monthly installments of both principal and interest amortized over a period of fifteen (15) years, with interest calculated on an adjustable rate basis equal to the prime rate (as determined by the Bank of America NT&SA-San Francisco) plus two percent (2%), but in no event shall the interest rate be lower than seven percent (7%) per annum or greater than twelve percent (12%) per annum. Notwithstanding the amortization, the principal balance shall be all due and payable in ten (10) years. There shall be no prepayment penalty.

e. Upon tender by Lessor of full payment of the purchase price, Lessee shall execute and deliver all documents necessary to convey to Lessor all right, title and interest in and to the assets of the Self Storage and R.V. Storage Facility free of all encumbrances and the rights and responsibilities of Lessee, or its assigns, under the terms of this Lease, shall terminate.

672-0003-00

2.04: **<u>Lessor's Obligation to Purchase</u>**

Upon expiration of this Lease, or any extension thereof, in order to compensate Lessee for the value of improvements made upon Lessor's property, and in consideration to Lessor for allowing Lessee's business to operate on Lessor's land during the period of the lease, Lessor shall purchase from Lessee the then existing business opportunity on the Leased Premises, including improvements placed on the Leased Premises by Lessee, for a price to be determined by, and in a manner consistent with, §2.03 above.

## ARTICLE III

## CONSIDERATION AND RENT

3.01: Consideration

Upon execution of this Lease, Lessee agrees to pay eight thousand dollars ($8,000.00) as full and complete consideration to Lessor for any and all development fees, inspections and services of Lessor's Planning Department arising from the review and approval of Lessee's proposal to lease and develop the Demised Premises.

3.02: Monthly Rent

a. As of the first day of the month following the date of approval of this Lease as provided for in paragraph 2.01 above, and each month thereafter until otherwise provided, Lessee shall pay to Lessor the sum of seven hundred dollars ($700) as and for rent of the Premises.

b. As of the first day of the nineteenth (19th) month of the term of this Lease, and each month thereafter until otherwise provided, Lessee shall pay to Lessor the sum of one thousand dollars ($1,000) as and for rent of the Premises.

c. As of the first day of the thirty-sixth (36th) month of the term of this Lease, and each month thereafter until otherwise provided, Lessee shall pay to Lessor the sum of two thousand dollars ($2,000), or an amount equal to eight percentum (8.00%) of of the gross revenues received from the Self Storage and R.V. Storage Facility, whichever amount is greater, as and for rent of the Premises, which revenues are to be calculated from the receipts for each previous month.

d. As of the first day of the seventy-second (72nd) month of the term of this Lease, and each month thereafter until otherwise provided, Lessee shall pay to Lessor the sum of two thousand five hundred dollars ($2,500), or an amount equal to ten percentum (10.00%) of the gross revenues received from the Self Storage and R.V. Storage Facility, whichever amount is greater, as and for rent

672-003-00

of the Premises, which revenues are to be calculated from the receipts for each previous month.

e. As of the first day of the one hundred and thirty-second (132nd) month of the term of this Lease, and each month thereafter until expiration of the primary term of this Lease, Lessee shall pay to Lessor the sum of three thousand dollars ($3,000), or an amount equal to twelve percentum (12.00%) of the revenues received from the Self Storage and R.V. Storage Facility, whichever amount is greater, as and for the rent of the Premises, which revenues are to be calculated from the receipts for each previous month.

f. At the expiration of the primary term of this Lease, should Lessee exercise its option to renew this Lease for an additional period of time, the parties hereby agree to exercise good faith efforts to negotiate new rental rates for the extended term of this Lease which rates shall include a limit of no more than fifteen percentum (15.00%) of the revenue received from the Self Storage and R.V. Storage Facility as the percentage rent basis of the monthly rental due for any renewal period.

g. All monthly rental payments required herein shall be deemed delinquent if not paid by the tenth (10th) day of the month each such payment is due, and must be paid in full without any set-off or deduction by Lessee whatsoever, or Lessor may pursue any and all remedies available pursuant to Article XIII herein.

3.03: <u>Percentage Rent</u>

a. Within fifteen (15) days after the expiration of each lease month, as hereinafter defined, Lessee shall furnish to Lessor a statement, attested to as to accuracy by the agent of Lessee who prepares the statement, setting forth the gross revenues realized from the Demised Premises during the previous lease month, and contemporaneously with the rendition of such statement, Lessee covenants to pay to Lessor the amount by which the percentage rental due for the previous lease month exceeds the monthly rental payment actually paid by Lessee for that lease month.

672-003-00

b. The expression "lease month" shall have the meaning ascribed to it in this paragraph, namely; the first lease month begins on the first day of the thirty-sixth (36th) month of the primary term of this Lease and ends on the last day of that month. Each successive month thereafter shall be deemed a separate Lease month. If there be a period at the end of the term of this Lease (whether or not such end of the term of this Lease is due to an earlier termination of this Lease in accordance with the terms thereof) which is less than a full month, then such shorter period shall be considered a separate lease month for percentage rent purposes. The minimum monthly rent shall be prorated.

3.04: <u>Books and Records</u>

a. Lessee covenants that there will be kept in respect to the business transacted from the Demised Premises, such books and records as may be necessary to show in detail all receipts of Lessee realized from the Demised Premises, and that such books and records will be preserved for not less than three (3) years after the close of the calendar year for which they are kept. Lessee further agrees that such books and records will in any event adhere to generally accepted accounting principles consistently applied. It is further agreed that Lessor shall appoint an inspector to be designated by the Chairman of the Board of Directors of the Washoe Development Enterprise, who shall have the right to examine during regular business hours at the main accounting office of Lessee, all books and records of Lessee in any way pertaining to business arising from the Demised Premises. Lessee represents that its main accounting office will be kept at:

Kohn Colodny, LLP
3352 Goni Road, Suite 162
Carson City, NV 89706-7917

and that the books and records aforesaid will be kept and maintained at said office; and Lessee agrees to notify Lessor if said books or records are to be kept in any other place. If, upon any examination by the inspector for the Lessor of the books or

672-003-00

records of Lessee, any error should be revealed in favor of Lessor which results in there being due to Lessor additional percentage rental in the amount of One Thousand Dollars ($1,000.00) or more, then the reasonable cost of such an examination shall be paid by Lessee to Lessor.

b. The term "stabilized expense(s)" or "stabilized operating expenses(s)" as used in §2.03 and elsewhere in this Lease shall be computed in accordance with Exhibit "C" hereto and incorporated herein by reference.

3.05: **Net Lease**

It is the intention hereof that the Lessor shall, except as hereafter noted, receive the monthly rental, the percentage rental, and any other charges due hereunder free from all charges, expenses, costs and deductions of every description, and that the Lessee shall pay all such items which, except for the execution and delivery of this Lease, would have been chargeable against the Demised Premises and payable by the Lessor.

3.06: **Covenant to Operate**

a. As one of the inducements for the making of this Lease, Lessee hereby agrees, subject to the provisions of Section 4.01 hereof during the full term hereof (except as may be otherwise expressly provided for herein), to operate the Self Storage and R.V. Storage Facility, which business operation may include individual self-storage units, space for the storage of recreational vehicles indoors or space for the storage of recreational vehicles outdoors. Lessee further agrees to install at its own expense all water, power and sewer improvements and to landscape the Demised Premises and to improve the roadways on the Leased Premises as necessary to facilitate the operation of the business. Lessee further agrees to keep the Self Storage and R.V. Storage Facility open daily for the regular conduct of its business during the same hours at least as are customarily employed by other

672-003-00

similar Self Storage and R.V. Storage Facility in the Carson City and Douglas County area.

b. It is agreed that nothing contained in this Lease shall be deemed or construed as creating a partnership or joint venture between Lessor and Lessee or between Lessor and any other party, or cause Lessor to be responsible in any way for the debts or obligations of Lessee or any other party.

## ARTICLE IV

## USE OF PREMISES

4.01: **Primary Use**

Lessee shall have the right to use the Demised Premises for the purpose of constructing, operating and maintaining a Self-Storage and/or R.V. Storage Facility containing, at its first phase of completion, not less than 260 self-storage units and containing not less than 26,000 square feet nor more than 260,000 square feet of self-storage and/or R.V. storage facility, as Lessee may elect. So long as said construction or any portion thereof is in conformance with the initial master plan approved by Lessor, Lessee will not require the consent of Lessor for such construction. To the extent that any proposed construction is not in conformance with the initial master plan, then Lessor shall be entitled to approve any changes, which approval shall not be unreasonably withheld. It is understood that it is the intent of the parties to give Lessee maximum discretion with reference to the types of storage development at the Demised Premises so long as the minimum construction standards hereinabove set forth are met.

4.02: **Limits on Use**

a. During the term of this Lease the Demised Premises and all improvements constructed and maintained thereon shall be used by Lessee for the use specified above and for no other use or purpose. Lessee shall not use or permit any other person to use the Premises, or any part thereof, for any purposes tending to injure the reputation thereof or for any improper or offensive use

672-003-00

or to constitute a nuisance; and Lessee shall at all times during said term conform to, and cause all persons using or occupying any part of said Premises to comply with all tribal and federal laws, ordinances, and regulations from time to time applicable thereto and to all operations thereon.

b. Lessee shall not commit any waste upon the Demised Premises, and Lessee shall not allow any sublessee to commit any waste upon the Demised Premises. Lessee shall not enter into any agreement, except in the ordinary course of business as a storage facility, granting to any sublessee the right to use or remain on the leased Premises for a period of more than thirty-one (31) days. Lessee may grant successive subleases to any sublessee on a month-to-month basis only if such sublessee is maintaining the subleased premises.

4.03: <u>Indemnity for Violation of Law</u>

672-003-00

a. Lessee covenants and agrees to indemnify and save Lessor harmless from any penalties, damages, or charges imposed for any violation of any and all laws, ordinances, and regulations applicable to the use and occupancy of the Demised Premises, whether occasioned by neglect, omission or willful act of Lessee or any person upon the Demised Premises by license or invitation of Lessee or holding or occupying the same or any part thereof under or by right of Lessee.

b. Lessee shall have the right to contest by appropriate legal proceedings, without cost or expense to Lessor, the validity of any law, ordinance or regulation of the nature herein referred to. If, by the terms of such law, ordinance, or regulation, compliance therewith may be legally held in abeyance without subjecting Lessor to any liability of whatsoever nature for the failure to so comply therewith, compliance therewith may be postponed until the final determination of such proceeding. Lessee, upon commencing such contest shall furnish to Lessor a document guaranteeing that Lessor and Lessor's interest in the

Demised Premises shall be saved harmless from any penalty, damage, charge or claim resulting from such contest.

4.04: <u>Signs</u>

Lessee shall have the exclusive right to erect and maintain upon the Leased Land signs relating to the business conducted thereon. Other signs, billboards or other advertising devices erected upon the Leased Land by Lessee may be permitted only upon prior written consent of Lessor and such consent may be conditioned upon payment of reasonable consideration in the form of rental or lump sum payments. Lessor shall not erect upon the Leased Land any signs not related to the business conducted thereon. Lessor agrees that it shall not permit any signs on adjacent properties within two hundred (200) feet of the Leased Land except that Lessor shall be entitled to permit signs not closer than one hundred (100) feet to the Leased Land so long as such signs identify an existing bonafide lessee of the property upon which such signs are located and, further, that such signs do not block or interfere with the view of Lessee's improvements and Lessee's signs on the Leased Land. All signs located on the Leased Land must conform with Tribal ordinance. Any signs located on the Leased Land as of the date of the execution of the Lease may be removed by Lessee or, at the option of Lessee, may remain and Lessee shall be solely responsible for maintaining such signs.

672-003-00

ARTICLE V

CONSTRUCTION BY LESSEE

5.01: <u>Lessee's Right to Build -- General Conditions</u>

Lessee shall have the right, at any time and from time to time, during the term of this Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace and remove all structures and improvements necessary to develop and operate the Self Storage and R.V. Storage Facility contemplated herein, at no expense to Lessor, provided, however, that such improvements shall be constructed according to the standards and ratings of the building

codes of Douglas County, State of Nevada, and they shall be constructed in good and workmanlike manner. Construction, at all stages, shall be subject to inspection by an agent to be designated by Lessor to ensure compliance with this Article. The inspection agent shall have the authority to halt construction or refuse to approve the building for occupancy if the provisions of this Article are not followed. Lessor shall bear the cost of paying for the services of the inspection agent.

5.02: <u>Approvals</u>

It is understood that the plans and specifications for any buildings or improvements to be erected by Lessee pursuant to §5.01 shall be submitted to Lessor for approval prior to the start of any construction. Such approval shall not be unreasonably withheld, and in any event shall not constitute an assumption of any liability for the design, engineering or structural integrity of the building or improvement. Site plan, drainage plan, engineering specifications and exterior color selection, as approved by Lessor, shall be attached hereto as Exhibit "D". Lessee and Lessor acknowledge the Leased Lands are located on lands held in trust by the Bureau of Indian Affairs for the Washoe Tribe of Nevada and California and, accordingly, development of, and construction on, the Leased Lands is not subject to, nor protected by, the State of Nevada or Douglas County, Nevada, within which political boundaries the Leased Lands lie.

5.03: <u>Buildings to be Within Demised Premises</u>

Any new building or buildings (and any buildings in replacement thereof thereafter constructed) constructed under the terms of the Lease shall be completely independent buildings and facilities erected wholly within the boundary lines of the Demised Premises. Prior to commencement of construction, Lessee shall provide Lessor with a survey or the Demised Premises by a surveyor licensed to do business in the state of Nevada along with plans showing the location of all structures and improvements necessary

672-003-00

to the Self Storage and R.V. Storage Facility in relation to the perimeter of the Demised Premises.

5.04: <u>Due Diligence</u>

Lessee shall prosecute construction of any building erected on the Premises to completion with due diligence, subject, however, to unavoidable delays, i.e., delays due to strikes, acts of God, inability to obtain labor or materials (financial inability excepted), governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty, or similar causes or any other causes beyond the reasonable control of Lessee. Said construction shall not be commenced, however, unless and until the final plans, specifications and erection details for the building to be erected shall have been approved by Lessor, which approval Lessor shall not be unreasonably delayed or withheld.

5.05: <u>Prerequisites to the Start of Construction</u>

No construction shall be commenced unless the following shall have first occurred:

a. Lessee at Lessee's expense shall have filed with the appropriate governmental body having jurisdiction with respect to development of the Leased Lands, including but not limited to the Bureau of Indian Affairs, complete plans, specifications, certificates, applications and any other documents required for the construction of structures and improvements by Lessee, and such governmental body shall have issued all necessary permits for the start of construction. All such plans and specifications shall first be approved by Lessor before submission to any other agency for approval. A completed Assessment Statement, if any be required by the Bureau of Indian Affairs, consistent with the National Environmental Protection Act, and the Bureau's approval thereof, shall be obtained by Lessee and attached to this Lease as Exhibit "E".

672-003-00

b. Lessee shall furnish to Lessor comprehensive general liability and property damage insurance, with contractual liability

endorsement, insuring the indemnity hereinafter set forth, with combined single limits of not less than three hundred thousand dollars ($300,000) for any one accident or occurrence, the contract or contracts of insurance providing such coverage to be subject to the approval of Lessor. Lessor has reviewed the standard policy endorsement attached hereto as Exhibit "F" and approves that endorsement. The requirements set forth above may be satisfied by Lessee arranging for Lessor to be named as an additional insured on policies of insurance to be purchased by Lessee, provided that such policies shall be subject to the approval of Lessor. Any policy of liability insurance furnished hereunder must insure Lessor and its employees against any liability it may incur to the public as a result of the use of the Demised Premises by Lessee, or the operations thereon of any contractor or subcontractor working for Lessee. Any such insurance shall be primary and not contributing, and no policy or policies of insurance maintained by Lessor shall be subject to any claim for any liability arising out of an occurrence covered by the insurance required herein. Lessee agrees that such policies of insurance will contain waivers of any right of subrogation against Lessor.

c. (i) There shall be delivered to Lessor a contractor's completion bond of a surety company licensed to do business in the State of Nevada, running to the Lessor as obligee, conditioned on the completion of the structures and improvements constructed in accordance with the plans and specifications and the provisions of this Lease, free and clear of all mechanics and other liens. Such bond shall be in such amount and in such form and written by such company as Lessor shall approve, which approval Lessor shall not unreasonably withhold. Such bond may also name as obligee, as its interest may appear, the leasehold mortgagee and any construction lender lending funds for the financing of the cost of construction of structures and improvements.

672-003-00

(ii) In lieu of a completion bond, Lessee may deliver to Lessor an irrevocable clean stand-by letter of credit or bond of a surety company, running to Lessor, in the amount of thirty-five thousand dollars ($35,000), or cash in that amount, to guarantee the full performance of the contract for the construction in accordance with the plans and specifications as approved by the Lessor. When Lessee has completed the construction of the project to the satisfaction of the inspection agent, Lessor shall release any claims to any cash deposit, letter of credit or bond required herein.

d. Lessee shall have delivered to Lessor satisfactory proof that workmen's compensation insurance has been procured to cover all persons employed in connection with the construction on the Leased Premises.

e. Lessee agrees that it will require its general contractor and each subcontractor contracting with such general contractor to execute a contractor's entry agreement covering contractor's activities in and around the Leased Lands, should Lessor require such an agreement.

f. Lessee shall notify Lessor ten (10) days prior to the commencement of any work upon the Demised Premises.

g. Lessee shall submit to Lessor plans indicating repairs necessary to the Demised Premises for any existing soil erosion and, upon approval of such plans, shall take all steps necessary to remedy all soil erosion problems existing before construction begins. Lessor shall assist in securing any permits or approvals necessary from other governments or agencies for erosion remediation on lands adjacent to the Demised Premises and affected by Lessee's operations on the Demised Premises.

h. Lessor hereby agrees to grant to Lessee ingress and egress to the Demised Premises by the route mutually agreeable to the parties. Lessor and Lessee shall both exercise good faith efforts to arrive at a mutually acceptable means of ingress and

672-0003-00

egress to the Lease Land and, if those efforts shall fail, either party may then terminate this Lease. The cost of maintenance of such access shall be shared equally by Lessor, Lessee and any other tenants of Lessee benefitting from such maintenance, provided all parties agree, in good faith, to any plan for maintenance before expenses are incurred. Lessor shall assist in obtaining any encroachment permits necessary from the Nevada Department of Transportation for use, maintenance or improvement of the access to the Leased Lands.

5.06: <u>Lessee's Ownership of Improvements and Fixtures</u>

a. Subject to the provisions of §2.03 and §2.04 above, it is expressly understood and agreed that any and all buildings, improvements, fixtures, machinery and equipment of whatsoever nature at any time constructed, placed or maintained upon any part of the Leased Land shall be and remain the property of Lessee, or its sublessees, as their interests may appear. Lessee shall have the right at any time during Lessee's occupancy of the Leased Land, or within a reasonable time thereafter, to remove any and all buildings, improvements, fixtures and equipment owned or placed by Lessee, its sublessees or licensees, in, under or upon the Leased Land, or acquired by Lessee, whether before or during the lease term. Upon the exercise of Lessor's option to purchase set out in §2.03 above or the purchase of Lessee's business and improvements pursuant to §2.04 above, all buildings, structures and personal property owned by Lessee on the Leased Lands shall become the sole property of Lessor.

672-0003-00

b. If after timely demand by Lessor to restore the Leased Lands to substantially the condition in which it existed at the time Lessee took possession, Lessee fails to affect such restoration, Lessor may remove from the Leased Premises any buildings, structures and personal property owned by Lessee and Lessor may restore the Leased Lands to substantially the condition in which it existed at the time Lessee took possession, except for

grading and vegetation and drainage, all at the expense of Lessee, which expense Lessee agrees to pay Lessor upon demand.

5.07: <u>Right to Cancel</u>

If Lessee shall not have commenced construction of the structures and improvements contemplated herein within twelve (12) months of the commencement date this Lease, Lessor shall have the right to cancel this Lease, whereupon Lessee shall have no further right, title or interest in or to the Demised Premises. Commencement of construction shall be deemed, for the purposes of this paragraph, to mean actual on-site construction proceeding in a workmanlike manner toward completion of the project as set out in the plans approved by Lessor. Lessee shall be excused from performing any of Lessee's obligations under this Lease that are prevented or delayed by any occurrence not within Lessee's control, including, but not limited to, destruction or damage to the Demised Premises by floods, fire, accidents, riots, explosions or any regulations, rules ordinances or orders of any governmental agency with legitimate authority over the Demised Premises.

672-003-00

**ARTICLE VI**

**TAXES**

6.01: <u>Real Property and Improvements</u>

Lessee shall be responsible for the payment of taxes, general and special assessments and other charges of any description commencing with the execution of this Lease and during the term hereof (including extensions) which may be levied upon or assessed against the Leased Land and any improvements thereon by the Washoe Tribe of Nevada and California, in an amount equal to or less than any such tax which might be imposed by a local or state government on similar property not deemed tribal trust lands in the immediate vicinity of the Leased Land.

6.02: <u>Personal Property</u>

Lessee shall be responsible for the payment of taxes, general and special assessments and other charges of any description

commencing with the execution of this Lease and during the term hereof (including extensions) which may be levied upon or assessed against personal property of the Lessee located on or arising from the Leased Land by the Washoe Tribe of Nevada and California, in an amount equal to or less than any such tax which might be imposed by a local or state government on similar property not deemed tribal trust lands in the immediate vicinity of the Leased Land.

6.03: <u>Sales and Use and Business Licensing</u>

Lessee shall be responsible for the payment of taxes, general and special assessments and other charges of any description commencing with the execution of this Lease and during the term hereof (including extensions) which may be levied upon or assessed against the proceeds of sales generated by the Self Storage and R.V. Storage Facility, the use of any property, real or personal, in the operation of the Self Storage and R.V. Storage Facility, and for the payment of all fees and charges required for licenses and permits necessary to conduct the business of the Self Storage and R.V. Storage Facility, by the Washoe Tribe of Nevada and California, in an amount equal to or less than any such tax or assessment which might be imposed by a local or state government on similar sales, use or business activity arising on lands not deemed tribal trust lands in the immediate vicinity of the Leased Land.

6.04: <u>Default for Non-payment</u>

Any failure by Lessee to pay any tax, assessment, permit or fee required under this Article shall constitute default by Lessee under the terms of this Lease.

**ARTICLE VII**

**INSURANCE TO BE MAINTAINED BY LESSEE**

7.01: <u>Hazard Insurance</u>

At all times Lessee shall maintain the insurance below described for the mutual benefit of Lessor and Lessee against the following risks:

672-003-00

a. Loss or damage by fire and such other risks as may be embraced within the standard form of extended coverage insurance from time to time available (and builder's risk insurance during course of construction of any improvements) insuring the full replacement cost of any buildings and other improvements existing on the Demised Premises at the execution of this Lease or from time to time erected on the Demised Premises. Lessee agrees that for any new building to be constructed by Lessee (or any building or buildings in replacement thereof) the coverage upon completion of the building shall be in an amount not less than the full value of the improvement. If any of the risks covered by the currently employed customary extended coverage endorsement on fire policies are hereafter excluded from such endorsement, but are insurable nevertheless by separate policies regularly issued by fire or casualty companies doing business in the State of Nevada, then the reference above to "risks as may be embraced within the standard form of extended coverage insurance" includes insurance coverage by such separate policy or policies;

b. Loss or damage by explosion of steam boiler, air conditioning equipment, pressure vessels or similar apparatus, now or hereafter installed in any building on the premises in such limits with respect to any one accident as may reasonably be requested by Lessor from time to time; and

c. Such other insurance, and in such amounts as may from time to time be reasonably required by Lessor against other insurable hazards which at the time are commonly insured against in the case of premises similarly situated, with due regard to the type of building, its construction and its use and occupancy.

7.02: <u>Liability Insurance</u>

Lessee shall also maintain at all times comprehensive general liability insurance, with a contractual liability endorsement insuring the indemnity hereinafter set forth, for the mutual benefit of Lessor, Lessee and the United States against claims for

672-003-00

personal injury or death or property damage in or about the Demised Premises, and the sidewalks, driveways and curbs adjacent thereto, with such limits as may reasonably be requested by Lessor, but not less than combined single limits of Five Hundred Thousand Dollars ($500,000) in the event of bodily injury or death of any number of persons in any one accident and broad form property damage coverage of not less than Three Hundred Thousand Dollars ($300,000). The limits of said policy shall be increased from time to time to meet changed circumstances, including, but not limited to, changes in purchasing power of the dollar and changes indicated by the course of plaintiff's verdicts in personal injury actions, and if the parties are unable to agree on the amount by which such limits are to be increased, the controversy shall be resolved by arbitration under the procedure in arbitration set forth in Article XVII hereof. Lessor may not request a change in the limits of the policy as above provided for more often than once in any five (5) year period. The policies shall provide that any right of subrogation against Lessor and Lessee is waived.

7.03: **Workmen's Compensation Insurance**

Lessee shall also maintain workmen's compensation insurance covering all persons employed by it in the conduct of its business on the Demised Premises.

7.04: **Deposit of Policies**

a. All policies shall name Lessor and Lessee as the insureds as their respective interests may appear, but subject, nevertheless to loss payee provisions and provisions relative to disposition of insurance proceeds stated below in this article.

b. All insurance shall be effected by valid and enforceable policies issued by insurers of responsibility and licensed to do business in the State of Nevada, such responsibility and the insuring agreements to meet with the reasonable approval of Lessor. The original policies under §7.01 may be delivered to any Leasehold Mortgagee and certificates of such insurance shall be delivered to

672-003-00

Lessor. If there be no Leasehold Mortgagee, the original policies shall be delivered to Lessor. The policy under §7.02, or a copy thereof, together with a certificate attesting to its issuance, shall be delivered to Lessor. Prior to the expiration date of any policy, the original renewal policy for such insurance shall be delivered by Lessee to the holder of the expiring original policy, and certificates thereof, as the case may be, shall be delivered to Lessor, together with satisfactory evidence of payment of the premium on such policy. To the extent obtainable, all such policies shall contain agreements by the insurers that (i) no act or omission by Lessee shall impair or affect the rights of the insureds to receive and collect the proceeds of the policy, (ii) such policy shall not be canceled except upon ten (10) days prior written notice to each named insured and loss payee, (iii) the coverage afforded thereby shall not be affected by the performance of any work in or about the Demised Premises. In addition, all policies under §7.01 (a) and (b) and under §7.02 shall contain endorsements that the rights of the insured to receive and collect proceeds shall not be diminished because of any additional insurance carried by Lessee or Lessor on their own accounts.

672-003-00

7.05: <u>Consent to Blanket Insurance Policy</u>

Nothing in this article shall prevent Lessee from carrying insurance of the kind required of Lessee under a blanket insurance policy or policies which cover other properties owned or operated by Lessee as well as the premises herein demised. Any such policy for Hazard Insurance must be in an amount sufficient to cover 100% of the replacement value of the damaged structure. The Lessee shall furnish Lessor with a written statement from the insurers under such policy setting forth the amount of the total insurance. Lessee shall furnish Lessor with copies of the schedule or makeup of all property affected by any such policy of blanket insurance within thirty (30) days after the filing of the schedule or makeup with the appropriate filing body. In the event Lessee relies upon

any such blanket insurance policy to comply with this §7.06 it shall be attached hereto as Exhibit "G" and Lessor acknowledges having reviewed same and accepts it as sufficient for the purposes of this Article.

7.06: **Increased Level of Fire Insurance**

If Lessor claims that the amount of fire insurance required to be carried by Lessee is not sufficient to cover full replacement cost of any building, then Lessor may submit to Lessee a written appraisal of the replacement cost of the building, which appraisal shall be made by the insurer or insurers underwriting the risk, or a party acceptable to such insurer or insurers; and the replacement cost of the building, as given in said appraisal, shall, except as otherwise below provided, be deemed the full replacement cost of the building; provided, however, that if Lessee objects to the replacement cost as given by the appraisal, and the parties cannot thereafter agree upon the amount of such replacement cost, then Lessee within twenty (20) days after the date of submission to it of Lessor's appraisal, may notify Lessor at its election to have the building valued for the purpose of ascertaining the replacement cost thereof, by an appraiser competent to compute the replacement cost of the building. If Lessee shall not avail itself of the foregoing election within the twenty (20) day period, then the replacement cost as determined by Lessor's appraiser shall be final and conclusive. The procedure set forth herein shall apply whenever, and as often as, Lessor may claim during the term of this Lease that the fire insurance carried by Lessee does not equal full replacement cost, but this procedure may not be invoked by Lessor more often than once in any thirty-six (36) month period during the term of the Lease. The costs of all appraisals required by this section shall be paid for by Lessee and if the same shall have been paid for in the first instance by Lessor, the amount thereof shall be reimbursed by Lessee to Lessor, as additional rental, on demand, provided, however, that if the appraisal by the appraiser selected

672-003-00

by the Lessee is less than the appraisal procured by Lessor, the latter appraisal shall be paid for by Lessor. The foregoing provisions of this section in no way affect or limit Lessee's engagements under §7.01 or relieve Lessee from any responsibility for having the subject property insured for less than full replacement cost if it shall develop that the building was under-insured.

7.07: <u>Indemnification</u>

a. Lessee agrees to investigate, defend, indemnify and hold harmless Lessor from and against any and all loss, damage, liability, claims, demands, detriments, costs, charges and expense (including attorney's fees) and causes of action of whatsoever character which Lessor may incur, sustain or be subjected to on account of loss or damage to property and loss of use thereof and for bodily injury to or death of any persons (including, but not limited to property, employees, subcontractors, agents and invitees of each party hereto) arising out of or in any way connected with the work to be performed or occupancy, operation, maintenance, enjoyment or use of the Demised Premises under this Lease and arising from any negligence or misconduct of Lessee or its employees, subcontractors, agents and invitees.

b. Lessee shall further indemnify Lessor for any liability, loss or damage (including attorney's fees) arising out of Lessee's introduction of any hazardous material or toxic substances on the Property.

c. Nothing shall be interpreted to require Lessee to indemnify Lessor for the negligence or misconduct of Lessor and its employees, subcontractors, agents and invitees, and Lessor shall indemnify Lessee for all damages, costs and attorneys' fees incurred by Lessee as a result of Lessor's misconduct or negligence or that of its employees, subcontractors, agents and invitees. Nothing herein shall be interpreted to require Lessee to indemnify

672-003-00

Lessor or remediate any hazardous material or toxic substance contamination which Lessee did not introduce or cause.

d. Lessee may conduct inspections of the demised Premises within thirty (30) days of the execution of this Lease to determine the existence of hazardous materials or toxic substances existing on the Demised Premises as of the date of execution of this Lease. If such investigations identify hazardous materials or toxic substances creating conditions not suitable for Lessee's intended use of the Demised Premises or for which Lessee could become liable, Lessee may withdraw from the transaction without further liability.

**ARTICLE VIII**

**CONDEMNATION OF THE PROPERTY**

**8.01:** **Division of Proceeds**

a. In the event of the taking or condemnation by any competent authority for any public or quasi-public use or purpose of the whole or materially all of the Demised Premises at any time during the term, this Lease shall terminate upon vesting of title in condemner or the taking of possession by said condemner, whichever first occurs.

b. If the values of the respective interests of Lessor and Lessee shall be determined by the court or jury determining the compensation to be paid by the condemning authority in the proceeding pursuant to which the Demised Premises shall have been taken or condemned, the value so determined shall be conclusive upon Lessor and Lessee. If such values shall not have been thus separately determined, such values shall be fixed by agreement between the Lessor and Lessee on terms consistent with §2.03 above, or if they are unable to agree then the controversy shall be resolved by arbitration under the procedure to govern in arbitration as set forth in Article XVII hereof.

672-003-00

8.02: <u>Partial Taking</u>

a. In the event of a partial taking or condemnation, i.e., a taking or condemnation of less than materially all of the Demised Premises, this Lease (except as hereinafter provided) shall nevertheless continue, but the monthly rental to be paid by Lessee shall thereafter be reduced in amounts proportionate to the extent to which the business of Lessee is interfered with as a result of the partial taking, and Lessee shall promptly restore the building as below provided. The award for the taking or condemnation shall be apportioned as provided in §8.01 above. Lessee agrees to apply that portion of the compensation awarded to it as follows in the following priority:

(i) FIRST: So much of it as shall be necessary to repair and restore the improvements as reasonably possible to the condition existing prior to the taking or condemnation shall be deposited with a depository under Article X to be used for such purpose.

(ii) SECOND: The balance shall belong to Lessee to be used for such purposes as it shall see fit.

b. Lessee shall undertake the work of repair and restoration as soon as reasonably practicable, and Lessee shall make such repairs and restoration even if the award balance is insufficient for the purpose.

c. Should such partial taking or condemnation (a) result in rendering the part of the Demised Premises remaining unsuitable for the purposes for which the improvement was designed or, (b) occur during the last five (5) years of the term, then Lessee or Lessor in either event, upon thirty (30) days written notice to the other party given at any time during sixty (60) days after the vesting of title in the condemner or the taking of possession by said condemner, may cancel and terminate this Lease. In such event the rental and other charges required under the terms of this Lease shall be apportioned as of the date of the termination and the

672-003-00

Lessee shall be discharged from responsibility to restore the Demised Premises and shall be compensated in accordance with the provisions of §8.01.

8.03: <u>Controversies to be Resolved by Arbitration</u>

In the event that there be any controversy under §8.02 as to whether the remainder of the Premises are suitable for the purposes for which the building was designed, or if there be any controversy under this article as to whether there has been a taking of materially all of the Premises, the controversy shall be resolved by arbitration as provided for in Article XVII.

8.04: <u>Temporary Taking</u>

If the whole or any part of the Demised Premises or of the Lessee's interest under this Lease be taken or condemned by any competent authority for its or their temporary use or occupancy, this Lease shall not terminate by reason thereof and the Lessee shall continue to pay, in the manner and at the time herein specified, the full amount of the monthly rent and all additional rent and other charges payable by the Lessee hereunder, and except only to the extent that Lessee may be prevented from so doing by the terms of the order of the condemning authority, to perform and observe all of the other terms, covenants, conditions and obligations hereof on the part of the Lessee to be performed and observed, as though such taking or condemnation had not occurred. In the event of any such temporary taking, or condemnation, the Lessee shall be entitled to receive the entire amount of the award made for such taking, whether paid by way of damages, rent or otherwise, unless such period of temporary use or occupancy shall extend to or beyond the expiration of the term of this Lease, in which case such award shall be apportioned between the Lessor and the Lessee on terms consistent with §2.03 above.

672-003-00

## ARTICLE IX

## DAMAGE OR DESTRUCTION OF IMPROVEMENTS

9.01: <u>Lessee's Absolute Duty to Repair</u>

If any building or improvement at any time on the Demised Premises shall be damaged or destroyed by any cause whatsoever, during the term of this Lease, Lessee shall, with reasonable promptness, repair and replace the same at its own expense, to at least the condition existing immediately prior to such damage or destruction, and shall do so, even though the proceeds of any insurance policies covering the loss shall be insufficient to reimburse Lessee therefore; provided, however, that if such proceeds of insurance are more than sufficient to pay the cost of any such rebuilding, Lessee shall be entitled to receive any surplus.

9.02: <u>No Abatement of Rent</u>

Lessee shall not be entitled to any abatement of rent, nor shall its obligations under this Lease be terminated during the term hereof, notwithstanding any destruction or damage to any improvements on the Demised Premises by any cause whatsoever; provided, however, that if any improvements on the Demised Premises are substantially destroyed by fire or other casualty at any time during the last five (5) years of the term of this Lease or any extension thereof, then Lessee may cancel and terminate this Lease by written notice given to Lessor within sixty (60) days after the date of such destruction. Rent and other charges hereunder are to be apportioned as of the date of destruction. Lessee shall thereupon be discharged from responsibility to repair the damage, but all proceeds of insurance covering the loss shall, in that circumstance, belong to Lessor free of any claim thereto by Lessee, subject, however, to the rights of any Leasehold Mortgagee.

672-003-00

## ARTICLE X

## DISBURSEMENT OF INSURANCE PROCEEDS AND OTHER FUNDS BY LEASEHOLD MORTGAGEE OR OTHER DEPOSITORY

10.01: Depository

All insurance proceeds or condemnation proceeds or expenses for the building or restoration or alteration work on the improvements made to the Leased Premises paid to any Leasehold Mortgagee or paid to or deposited with the bank or trust company meeting the qualifications stated in §7.05 (b) (herein in each case called the "Depository") shall be paid to them in the order named and shall be disbursed in the manner hereinafter provided.

10.02: Disbursement in Stage Payments

From time to time as (i) any change or alteration of the kind described in §11.01 progresses, or (ii) the restoration, repair, replacement or rebuilding of any improvement resulting from damage by fire or any other cause, or as a result of a partial taking in a condemnation proceeding (hereinafter collectively referred to in this article as the "Work"), disbursement of any monies shall be made by Depository in stage payments as the Work is prosecuted by Lessee, less a "Retention Fund" of ten percent (10%) of each payment, upon certificates of the architect or engineer in charge of the Work certifying to the cost of the Work performed to the date of the certificate and the amount thereof unpaid and justly due and upon satisfactory proof that there are no mechanic's or materialmen's liens filed and undischarged pertaining to the Work. The Retention Fund shall be paid over by Depository to Lessee within thirty (30) days after written notice to Depository and Lessor that the Work is complete and upon satisfactory proof that all costs have been paid or provided for. The Depository may require the submission to it of any additional data reasonably required by it to insure that the payment is, in all respects, proper. In no event shall any payment be required to be made to Lessee until Lessee shall have expended for the Work an amount

672-003-00

equal to the excess of any loss over the amount paid by any insurance carrier on the adjustment of any loss, and due proof of payment for such excess shall have been submitted by Lessee, but the foregoing provisions of this sentence are not to be construed as a consent to insuring for less than full replacement costs. All payments shall be received by Lessee in trust to pay the cost of the Work and shall not be commingled with Lessee's other funds. Lessor and the Depository shall have the right to examine Lessee's contracts, books and records pertaining to the Work. Nothing herein prevents the Depository from imposing such additional conditions to the disbursement of funds as it may, in the circumstances, deem prudent and necessary to achieve the prosecution and completion of the Work and the full and due payment thereof.

10.03: <u>Depository's Fees and Expenses</u>

After paying or providing for the cost of the Work, the expenses and fees of the Depository may be charged against the fund in its hands, but if the deposited funds are insufficient to achieve this, the Lessee shall pay any deficiency.

10.04: <u>Nonliability of Depository</u>

The Depository shall not be responsible to the Lessor nor to the Lessee for any payment made by it in good faith and in accordance with the provisions hereof.

## ARTICLE XI

## CHANGES AND ALTERATIONS BY LESSEE

11.01: <u>Conditions to be Observed by Lessee</u>

After construction and completion of any new improvements on the Demised Premises, but not before, Lessee shall have the right after giving Lessor fifteen (15) days written notice and after securing Lessor's reasonable approval from time to time, to make such changes, alterations, demolition or new construction, structural or otherwise, to the improvements or to construct new improvements on the Demised Premises as Lessee shall deem necessary

672-003-00

or desirable. Such changes, alterations, demolition, or new construction (in this article referred to as the "Work" or collectively as "Changes and Alterations" or "Changes or Alterations") shall be made in all cases subject to the conditions hereinafter set forth which Lessee covenants to observe and perform.

11.02: Lessee to Secure all Necessary Approvals

No changes or alterations shall be undertaken until Lessee shall have procured and paid for, so far as the same may be required from time to time, all permits and authorizations of governmental agencies having jurisdiction, and Lessor shall, but without cost or expense to Lessor, join in the application for such permits or authorizations whenever such action is deemed by Lessee to be necessary, provided, however, that Lessor shall have the right to object to conditions imposed by such authority deemed by it to be unreasonable.

11.03: Work to be Supervised by Architect or Engineer, Lessor's Approval

Any Changes or Alterations shall be conducted under the supervision of an architect or engineer licensed in the State of Nevada selected by Lessee for the purpose, and if the estimated cost as determined by such architect or engineer of the Work to be performed exceeds Twenty-Five Thousand Dollars ($25,000), the architect or engineer so selected, as well as his plans and specifications shall meet with the approval of Lessor, which approval Lessor shall not unreasonably withhold. Such approval shall not constitute an assumption of any liability for the design, engineering or structural integrity of the building or alterations proposed to be erected or performed by Lessee.

11.04: Value and Utility of Improvements Not to Be Impaired

All Changes and Alterations shall be of such a kind, when completed, that the value and utility of the improvements on the Demised Premises shall not be less than the value and utility of

672-003-00

the improvements immediately before any such Changes or Alterations; except that in the case of a Change or Alteration involving demolition and the construction of a new building, such new building will be of a value not less than the value of the building to be demolished.

11.05: Work to Be Done in Workmanlike Manner; Insurance

All work done in connection with any Change or Alteration shall be done in a good and workmanlike manner and in compliance with the Uniform Building Code as adopted in Douglas County, State of Nevada. The cost of any such Change or Alteration shall be paid in cash or its equivalent, so that the Demised Premises shall at all times be free of liens for labor and materials supplied or claimed to have been supplied. The work of any Change or Alteration shall be prosecuted with reasonable dispatch, but unavoidable delays will be excepted. Workmen's compensation insurance covering all persons employed in connection with the Work shall have been procured before any Work is begun; and comprehensive general liability insurance with contractual liability endorsement, and property damage insurance for the mutual benefit of Lessor and Lessee with limits not less than those required to be carried pursuant to §5.05 shall be maintained at Lessee's sole cost and expense at all times when any Work is in progress. Lessee, in addition, will require its contractor and all subcontractors to execute Lessor's standard form of contractor's entry agreement.

672-003-00

11.06: Bonds Required

No Changes or Alterations undertaken as a single project and involving an estimated cost aggregating more than Twenty-Five Thousand Dollars ($25,000) shall be undertaken until Lessor shall have been furnished by Lessee, at Lessee's expense, security as described in subdivision (c)(i) and (ii) of §5.05, but conditioned in this instance upon the completion of the Work in the same manner as therein described in respect to the building referred to in that

section. Such bond may include any Leasehold Mortgagee. Alternatively, Lessee may furnish a payment and performance bond of such a surety company for performance of the Work by the contractor running in favor of Lessor and a lender, if any, that has issued its commitment to finance the cost of the Work, which commitment requires that a performance and payment bond be delivered to the lender before any advance will be made. The loan with such lender must actually close in accordance with said commitment. In lieu of such a payment and performance bond, where permissible by the terms of the mortgage commitment, Lessee:

a. May deposit with a bank or trust company designated by Lessee (but subject to the approval of Lessor, which approval shall not be unreasonably withheld) a sum sufficient to pay the entire cost of such Change or Alteration as estimated by the architect or engineer referred to in §11.03 of this article, which sum shall be disbursed in accordance with the provisions of Article X hereof; or

b. May supply Lessor with other security in lieu of the cash deposits specified in (i) reasonably satisfactory to Lessor as indemnity to pay all such costs. In the case of any Work falling within the ambit of this §11.06 where the Work is made necessary by or is done in connection with an insured casualty loss or a partial condemnation of the building, the cash deposit or the security provided for herein need not be for an amount greater than the excess of the cost of the Work, as estimated by the architect or engineer in charge of the Work, over the adjusted loss or the award that is made, as the case may be, but the funds of such deposit or Lessee's funds where security is given must first be used toward the cost of the Work before any sums are withdrawn from the Depository's account.

**11.07: <u>Rent Deposit</u>**

a. If the Work entails the demolition of a building and the construction of new buildings, Lessee must deposit with Lessor before commencing any Work, an amount equal to one year's rental

672-003-00

payment in accordance with §3.02 and any anticipated taxes, or in lieu thereof, unconditional guarantees for the payment of such rental and taxes by responsible persons reasonably satisfactory to Lessor. In lieu of such deposit or guarantee, Lessee may deposit with Lessor an irrevocable clean stand-by letter of credit of a bank or trust company designated by Lessee, but subject to the written approval of Lessor, which approval shall not be unreasonably withheld. The letter of credit shall be in the amount of the net rental and taxes required to be deposited by the foregoing provisions of this subdivision. If the parties shall be unable to agree as to what that amount of net rental and taxes shall be, the controversy shall be resolved by arbitration under the provisions of Article XVII, but pending resolution of the controversy the letter of credit shall be in an amount not less than the minimum rental for the one (1) year following the proposed date for the beginning of demolition and/or the construction of new buildings. The letter of credit shall state that it is payable unconditionally to the Lessor or order upon presentation of the letter before the expiration dates set forth therein. Lessor shall not present said letter of credit for payment unless:

(i) There is a default in payment of rental or in any other obligation of Lessee, whereupon the funds paid upon the letter of credit may be held and employed by Lessor to correct Lessee's default and to reimburse Lessor for any damages sustained by Lessor; or,

(ii) The letter expires before the date of completion of the new building and at least ten (10) days before the expiration of the letter of credit a renewal letter of credit shall not have been delivered to Lessor, it being the intention hereof that Lessee must keep renewing the letter until the time when it is no longer required by the foregoing provisions to have such letter on deposit with Lessor, without any need on the part of Lessor to give Lessee any notice that it is in default in supplying such renewal, any

672-003-00

provisions hereof as to notice of default to Lessee to the contrary notwithstanding.

b. Any funds in Lessor's hands upon the cashing by Lessor of the letter of credit at the time of completion of the new building shall be returned to Lessee if Lessee is not then in default hereunder, but if there is such a default, Lessor may continue to retain the funds and apply the same until the default is cured.

**ARTICLE XII**

**ASSIGNMENT, SUBLETTING AND MORTGAGING**

**12.01: <u>Assignment by Lessee</u>**

This Lease may not be assigned by Lessee without the prior written consent of Lessor and the Secretary, which consent shall not be unreasonably withheld. In any event, no such assignment shall be valid unless there shall be delivered to Lessor in due form for recording with the Bureau of Indian Affairs, within ten (10) days after the date of the assignment, (a) a duplicate original of the instrument of assignment, and (b) an instrument of assumption by the transferee of all of the Lessee's obligations under this Lease. Upon any assignment of this Lease conforming to the terms hereof, but not otherwise, the assignor shall be released from the performance of obligations on the part of Lessee thereafter to be performed under this Lease, except any obligation to hold and apply monies held by the assignor at the date of the assignment, the disposition whereof is governed by the terms of this Lease, and except further any unperformed obligations which shall have matured prior to such assignment. Without limiting any of the foregoing, but in addition thereto, any assignment in contravention of the terms hereof is void, but this shall not impair any remedy of Lessor because of Lessee having engaged in an act prohibited by the terms hereof.

672-003-00

**12.02: <u>Mortgage of Leasehold Interest</u>**

a. Lessee may make a mortgage or mortgages of its interest in this Lease. If Lessee encumbers its leasehold interest in the

Demised Premises for the purpose of borrowing capital for the development and improvement of the Demised Premises, the encumbrance instrument must be approved by the Secretary. If, upon foreclosure or sale, the purchaser is a party other than the encumbrancer, the assignment from the encumbrancer to the purchaser must be approved by the Secretary and the purchaser will be bound by the terms of this Lease and will assume in writing all the obligations hereunder.

b. If Lessee shall have made any such mortgage (the holder of such mortgage being herein referred to as "Leasehold Mortgagee", and such mortgage being herein sometimes referred to as "Leasehold Mortgage"), and if a Leasehold Mortgagee shall have given to Lessor a notice ("Leasehold Mortgagee's Notice") specifying the name and address of the Leasehold Mortgagee, Lessor shall give to the Leasehold Mortgagee a copy of each notice of default by Lessee at the same time as and whenever any notice of default shall thereafter be given by Lessor to Lessee, addressed to the Leasehold Mortgagee at the address last furnished to Lessor. No notice of default by Lessor shall be deemed to have been given to Lessee unless and until a copy thereof shall have been given to the Leasehold Mortgagee. From and after receiving the Leasehold Mortgagee's Notice, Lessor and Lessee will not cancel, surrender, modify, or amend this Lease in any respect without the prior written consent of the Leasehold Mortgagee.

c. The Leasehold Mortgagee, in case Lessee is in default, shall have thirty (30) days in addition to the time otherwise allowed in Article XII, to remedy the default or cause the same to be remedied. Lessor will accept performance by the Leasehold Mortgagee of any covenant, condition or agreement on Lessee's part to be performed hereunder with the same force and effect as though performed by Lessee. No default by Lessee shall be deemed to exist so long as the Leasehold Mortgagee promptly commences, in good

672-003-00

faith, to rectify the claimed default and to prosecute the same to completion with diligence and continuity.

d. The time for the Leasehold Mortgagee to cure any default by Lessee which reasonably requires the Leasehold Mortgagee to be in possession of the Demised Premises, shall be deemed extended to include the period of time required by the Leasehold Mortgagee to obtain possession with due diligence, provided, however, that during that period all of the monetary obligations of Lessee required under this Lease are being duly performed.

e. If a Leasehold Mortgagee shall acquire Lessee's interest in this Lease as a result of a sale under a Leasehold Mortgage pursuant to a power of sale contained therein, pursuant to a judgment of foreclosure, through any transfer in lieu of foreclosure or through settlement of or arising out of any action, the Leasehold Mortgagee shall have the privilege of transferring its interest in this Lease to a nominee or a wholly owned subsidiary corporation without the prior consent of Lessor, provided, however, that there shall be delivered to Lessor in due form for recording with the Bureau of Indian Affairs, within ten (10) days after the date of such transfer, (a) a duplicate original of the instrument of assignment, and (b) an instrument of assumption by the transferee of all of Lessee's obligations under this Lease, and the Leasehold Mortgagee shall be relieved of any further liability under this Lease from and after such transfer.

f. If a Leasehold Mortgagee, or its nominee or wholly owned subsidiary corporation, shall acquire title to Lessee's interest as provided in this Article XII and if the Leasehold Mortgagee, nominee or subsidiary corporation shall desire to assign this Lease (other than to a nominee or a wholly owned subsidiary corporation), the Leasehold Mortgagee, nominee or subsidiary corporation may assign this Lease without the prior consent of Lessor to any person, firm or corporation provided there shall be delivered to Lessor in due form for recording with the Bureau of Indian Affairs

672-003-00

within ten (10) days after the assignment (a) a duplicate original of the instrument of assignment, and (b) an instrument of assumption by the transferee of all of the Lessee's obligations under this Lease and any such Leasehold Mortgagee, nominee or subsidiary corporation shall be relieved of any further liability under this Lease from and after such assignment.

g. Any purchaser at a foreclosure sale, other than a Leasehold Mortgagee, must assume this Lease and it shall have no right in respect to the Demised Premises unless it so assumes and delivers to Lessor a duplicate original of the assumption agreement to be executed in form for recording with the Bureau of Indian Affairs within ten (10) days after such purchaser acquires title to the Lessee's interest in this Lease.

**12.03: Delivery of New Lease to Mortgagee**

a. In case of termination of this Lease by reason of any default of Lessee or for any other reason, Lessor shall give notice thereof to any Leasehold Mortgagee who shall have given Lessor a Leasehold Mortgagee's Notice, which notice of Lessor shall be addressed to such Leasehold Mortgagee at the address furnished to Lessor in the Leasehold Mortgagees's Notice. Lessor, upon written request by the Leasehold Mortgagee made at any time within forty-five (45) days after the giving the notice of termination by Lessor, and upon approval of the Secretary, shall execute and deliver a new lease of the Demised Premises to the Leasehold Mortgagee, or its designee or nominee, for the remainder of the term of this Lease, upon all of the covenants, conditions, limitations and agreements herein contained, provided that the Leasehold Mortgagee shall pay to Lessor simultaneously with the delivery to it of such new lease all rent and other charges due under this Lease up to and including the date of the commencement of the term of such new lease, together with all expenses incurred by Lessor, including reasonable attorney's fees.

672-003-00

b. Any new lease and the leasehold estate created by the provisions of this section shall, subject to the same conditions contained in this Lease, continue to maintain the same priority date as this Lease with regard to any mortgage on the Demised Premises or any part thereof or any other lien, charge or encumbrance thereon, whether or not the same shall then be in existence. If there be more than one Leasehold Mortgagee, then the one that is prior in lien shall have priority as to the rights and privileges afforded by this section.

**12.04: <u>Notice of Arbitration; Right to Participate</u>**

In any circumstance where arbitration is provided under this Lease, Lessor agrees that Lessor will give any Leasehold Mortgagee who has given Lessor a Leasehold Mortgagee's Notice, notice of demand by Lessor for any arbitration, and Lessor will recognize any such Leasehold Mortgagee, in the order of their priority if there is more than one, as a proper party to participate in the arbitration if Lessee fails to do so, whether such failure is in the matter of designating arbitrators or otherwise.

**12.05: <u>Subletting by Lessee</u>**

Subject to restrictions contained in §4.02:

a. Lessee may sublet the whole or any portion of the Demised Premises, subject to the provisions hereinafter set forth which, if not observed, render the subletting void but without thereby impairing any remedy of Lessor.

b. Except in regard to rentals in the ordinary course of business, prior to entering into any sublease of the Leased Land or sublease of any building on the Leased Land, Lessee will furnish to Lessor for Lessor's approval the form of sublease which Lessee proposes to enter into with such sub-lessee, together with an accurate and detailed plan for all of the space proposed to be sublet by Lessee. The sublease form shall contain a provision substantially to the effect that if there be any termination whatever of this Lease then the sublessee, at the request of

672-003-00

Lessor, will attorn to Lessor, and the sublease shall continue in effect with Lessor. The sublease shall not serve to relieve the Lessee from any liability created by the provisions of this Lease, nor shall such sublease diminish any supervisory authority of the Secretary as provided for under this Lease.

c. Lessor agrees to enter into Non-disturbance and Attornment Agreements with the sublessee if the sublease shall have been first approved in writing by Lessor, which approval shall not be unreasonably withheld. Without limiting that which would constitute reasonable grounds for Lessor's withholding of approval, it is agreed that it shall not be deemed unreasonable for Lessor to refuse to give its consent to any such sublease if the rental reserved by the sublease shall be less than the fair market rental in respect to the premises therein demised at the time of the execution of the sublease, taking into account the term of the sublease and possible graduation in rental during the term.

d. In no circumstance shall Lessor be required to give its approval of a sublease if the sublease (i) calls for the granting of a concession in rent at any time except during the first sixty (60) days of the term of the sublease made to an actual space occupant for the space to be occupied by him or allows the prepayment of rent beyond the current month for which rent is due and payable except the prepayment of rental for the last month of the term of such a space occupant for his space, or (ii) would impose upon the Lessor any obligation to make alterations to the premises demised under the sublease or to pay the sub-lessee for alterations made by it.

672-003-00

## ARTICLE XIII

## DEFAULT AND REMEDIES

**13.01: <u>Events of Default</u>**

Each of the following events shall be a default by Lessee and a breach of this Lease:

a. Abandonment or surrender of the Premises or of the leasehold estate, or failure or refusal to pay when due any installment of rent or any other sum required by this Lease to be paid by Lessee, or to perform as required or conditioned by any other covenant or condition of this Lease.

b. The subjection of any right or interest of Lessee to attachment, execution, or other levy, or to seizure under legal process, if not released within thirty (30) days, provided that the foreclosure of any mortgage permitted by provisions of this Lease relating to purchase or construction of improvements shall not be construed as a default within the meaning of this paragraph.

c. The appointment of a receiver to take possession of the Premises or improvements or of Lessee's interest in the leasehold estate or of Lessee's operations on the Premises for any reason, including but not limited to assignment for benefit of creditors or voluntary or involuntary bankruptcy proceedings, but not including receivership (i) pursuant to administration of the estate of any deceased or incompetent Lessee or of any deceased or incompetent individual member of any Lessee, or (ii) pursuant to any mortgage permitted by provisions of this Lease relating to purchase or construction of improvements, or (iii) instituted by Lessor, the event of default being not the appointment of a receiver at Lessor's instance but the event justifying the receivership, if any.

672-003-00

d. An assignment by Lessee for the benefit of creditors or the filing of a voluntary or involuntary petition by or against Lessee under any law for the purpose of adjudicating Lessee as bankrupt; or for extending time for payment, adjustment or satisfaction of Lessee's liability; or for reorganization, dissolution, or arrangement on account of or to prevent bankruptcy or insolvency; unless the assignment or proceeding, and all consequent orders, adjudications, custodies and supervisions are dismissed, vacated or otherwise permanently stayed or terminated

within thirty (30) days after the assignment, filing or other initial event.

13.02: <u>Notice as Precondition to Lessor's Remedies</u>

As a precondition to pursuing any remedy for an alleged default by Lessee, upon a showing satisfactory to the Secretary that there has been a violation of this Lease or a violation of controlling regulations, Lessor shall serve Lessee with written notice setting forth in detail the nature of the alleged violation and allowing Lessee ten (10) days from the date of receipt of notice in which to show cause why the lease should not be canceled. Such notice of default must also be given to all sureties, all qualifying subtenants and all Leasehold Mortgagees whose names and addresses were previously given to Lessor in a notice or notices from Lessee or any Leasehold Mortgagees stating that the notice was for the purpose of notice under this provision. A qualifying subtenant is a subtenant in possession under an existing sublease which is proper under this Lease. Each notice of default shall specify in detail the alleged event of default and the intended remedy.

672-003-00

13.03: <u>Lessee's Right to Cure Defaults</u>

If within the ten (10) day period provided for in §13.02 it is determined that the breach may be corrected and Lessee agrees to take the necessary corrective measures, Lessee will be given an opportunity to carry out such measures and shall be given a reasonable time within which to take corrective action to cure the breach.

13.04: <u>Rights of Subtenants; Non-disturbance Clause</u>

Any subtenant of the entire Premises, and any subtenant of such a subtenant, shall have the right, at its election, to cure a curable default of this Lease or any Leasehold Mortgage then existing under the provisions of this Lease relating to purchase or construction of improvements. If any such subtenant cures all defaults then existing, or if any such subtenant cures all defaults

that are then curable, that subtenant's possession and use shall not be disturbed by Lessor or by any Leasehold Mortgagee as long as (i) the subtenant performs his subleases's provisions, (ii) the subtenant attorns to Lessor and Leasehold Mortgagee according to their respective interests, and (iii) subsequent defaults are cured or are not curable.

13.05: **Lessor's Remedies**

If any default by Lessee shall continue uncured, following notice of default as required by this Lease, for the period applicable to the default under the applicable provision of this Lease, Lessor has the following remedies in addition to all other rights and remedies provided by law or equity, to which Lessor may resort cumulatively or in the alternative:

a. Lessor may at Lessor's election terminate this Lease by giving Lessee notice of termination. The notice of termination must inform Lessee of its right to appeal pursuant to Title 25, Code of Federal Regulations, Part 2. Absent such an appeal, on the giving of the notice, all of Lessee's rights in the Premises and in all improvements shall terminate and Lessee shall surrender and vacate the Premises and all improvements in broom clean condition, and Lessor may re-enter and take possession of the Premises and all remaining improvements and eject all parties in possession or eject some and not others or eject none; provided that no subtenant qualifying under non-disturbance provisions of this Lease shall be ejected. Termination under this paragraph shall not relieve Lessee from the payment of any sums then due to Lessor from any claim or damages previously accrued or then accruing against Lessee.

672-003-00

b. Lessor may, at Lessor's election, reenter the Premises without terminating this Lease, and at any time and from time to time re-let the Premises or improvements or any part or parts of them for the account and in the name of Lessee or otherwise. Lessor may at Lessor's election eject all persons or eject some and not others or eject none, provided that no subtenant qualifying

under non-disturbance provisions of this Lease shall be ejected. Lessor shall apply all rents from re-letting as in the provision on assignment of sub-rents hereinafter set forth. Any re-letting may be for the remainder of the term or for a longer or shorter period. Lessor may execute any leases made under this provision either in Lessor's name or in Lessee's name and shall be entitled to all rents from the use, operation, or occupancy of the Premises or improvements or both. Lessee shall nevertheless pay to Lessor on the due date specified in this Lease the equivalent of all sums required of Lessee under this Lease, plus Lessor's expenses, less the avails of any re-letting or attornment. No act by or on behalf of Lessor under this provision shall constitute a termination of this Lease unless Lessor gives Lessee notice of termination.

c. Lessor may at Lessor's election use Lessee's personal property and trade fixtures or any of such property and fixtures without compensation and without liability for use or damage, or store them for the account and at the cost of Lessee. The election of one remedy for any one item shall not foreclose an election of any other remedy for another item or for the same item at a later time.

672-0003-00

d. Lessor shall be entitled at Lessor's election to each installment of rent or to any combination of any installment for any period before termination, plus interest at the rate of ten percent (10%) per year from the due date of each installment. Avails of re-letting or attorned sub-rents shall be applied, when received, as follows: (i) to Lessor to the extent that the avails for the period covered do not exceed the amount due from and charged to Lessee for the same; and (ii) the balance to Lessee. Lessor shall make reasonable efforts to mitigate Lessee's liability under this provision.

e. In the event that Lessor terminates this Lease because of a breach hereof, Lessor may recover from Lessee:

(i) An amount, calculated at the time of award, equal to the unpaid rent (including charges equivalent to rent) which had been earned at the time of termination;

(ii) An amount, calculated at the time of award, equal to the unpaid rent (including charges equivalent to rent) which would have been earned after termination and until the time of the award, less any amount of unpaid rent which Lessee proves could have been reasonably avoided,

(iii) An amount, calculated at the time of award, equal to the value of the unpaid rent (including charges equivalent to rent) for the balance of the term after the time of award in excess of the amount of such rental loss that Lessee proves could be reasonably avoided;

(iv) Any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under the Lease or which in the ordinary course of things would be likely to result therefrom. The amounts referred to in (i) and (ii) above shall include interest at the maximum legal rate. The amount referred to in (iii) above shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%). Nothing in this paragraph shall affect the right of Lessor to indemnification for liability arising prior to the termination of the Lease for personal injuries or property damage as provided in Article VII hereof. Nothing herein provided shall affect Lessor's rights relating to actions for unlawful detainer, forcible entry, and forcible detainer.

672-003-00

f. Lessee assigns to Lessor all sub-rents and other sums falling due from subtenants, licensees, and concessionaires (herein called subtenants) during any period in which Lessor has the right under this Lease, whether exercised or not, to reenter the Premises for Lessee's default, and Lessee shall not have any rights to such sums during that period. This assignment is subject and

subordinate to any and all assignments of the same sub-rents and any other sums made, before the default in question, to a Leasehold Mortgagee under any Leasehold Mortgage permitted by provisions of this Lease relating to financing of improvements. Lessor may at Lessor's election reenter the Premises and improvements with or without process of law, without terminating this Lease and either or both collect these sums or bring action for the recovery of the sums directly from such obligors. Lessor shall receive and collect all sub-rents and avails from re-letting, applying them: First, to the payment of reasonable expenses (including attorney's fees or broker's commissions or both) paid or incurred by or on behalf of Lessor in recovering possession, placing the Premises and improvements in good condition, and preparing or altering the Premises or improvements for re-letting; Second, to the reasonable expense of securing new Lessees; Third, to the fulfillment of Lessee's covenants to the end of the term; and Fourth, to Lessor's uses and purposes. Lessee shall nevertheless pay to Lessor, on the due dates specified in this Lease, the equivalent of all sums required of Lessee under this Lease, plus Lessor's expenses, less the avails assigned and actually collected under this provision. Lessor may proceed to collect either the assigned sums or Lessee's balances or both, and any installment or installments of them, either before or after expiration of the term, but the period of limitation shall not begin to run on Lessee's payments until the due date of the final installment to which Lessor is entitled, nor shall it begin to run on payments of the assigned sums until the due date of the final installment due from the respective obligors.

672-003-00

## ARTICLE XIV

## SURRENDER AND REMOVAL

**14.01: Surrender of Possession**

a. Upon the expiration of the term of this Lease or any earlier termination thereof, Lessee shall surrender to Lessor possession of the Demised Premises and all improvements constructed

and installed thereupon, free and clear of all encumbrances done, made or suffered by Lessee.

b. If Lessee shall not then be in default under any of the covenants and conditions hereof, Lessee may remove or cause to be removed all movable furniture, furnishing and equipment installed in the improvements on the Demised Premises. All such personal property that is not removed from the Demised Premises within thirty (30) days after the date of any termination of this Lease thereafter shall belong to Lessor without the payment of any consideration, subject to the rights of any person holding a security interest therein.

**14.02: <u>Lessee's Quitclaim</u>**

Upon the expiration of the Lease Term or any sooner termination of this Lease, or purchase as set out in §2.03 above, Lessee agrees to execute, acknowledge and deliver to Lessor a proper instrument in form recordable with the Bureau of Indian Affairs, releasing and quit-claiming to Lessor all right, title and interest of Lessee in and to the Demised Premises and all improvements thereon.

672-003-00

**ARTICLE XV**

**LESSOR'S GENERAL PROTECTIVE PROVISIONS**

**15.01: <u>Lessor's Right of Entry and Inspection</u>**

Lessee shall permit Lessor or Lessor's agents, representatives or employees to enter upon the Demised Premises for the purposes of determining whether agreements in this Lease are being complied with, maintaining, repairing or altering the land, or showing the Demised Premises to prospective lessees, lenders or others.

**15.02: <u>Lessor's Right to Cure Default</u>**

In the event Lessee shall fail to pay and discharge or cause to be paid and discharged, when due and payable, any tax, assessment, or other charge upon or in connection with the Demised Premises, or any lien or claim for labor or material employed or used in, or any claim for damage arising out of the construction,

repair, restoration, replacement, maintenance and use of the Demised Premises and the improvements thereon, or any judgment on any contested lien or claim thereof, or any insurance premium or expense in connection with the Demised Premises and the improvements thereon, or any other claim, charge or demand which Lessee has agreed to pay or cause to be paid under the covenants and conditions of this Lease, and if Lessee, after ten (10) days written notice from Lessor to do so, shall fail to pay and discharge the same, then Lessor may, at its option, pay any such tax, assessment, insurance expense, lien, claim, charge or demand, or settle or discharge any action therefore or judgment thereon, and all costs, expenses and other sums incurred or paid by Lessor in connection with any of the foregoing shall be paid by Lessee to Lessor upon demand, together with interest thereon at the rate of ten percent (10%) per annum from the date incurred or paid, and any default in such payment shall constitute a breach of the covenants and conditions of this Lease.

672-003-00

15.03: <u>Accord and Satisfaction</u>

No payment by Lessee or receipt by Lessor of a lesser amount than the full rental due shall be deemed satisfaction of the full amount due. No endorsement or statement on any check shall be construed as an accord and satisfaction of any amounts owing from Lessee to Lessor. Lessor may accept any check or payment for an amount less than the full amount owing Lessor without prejudice to Lessor's right to recover the balance of the rental or pursue any other remedy provided for in this Lease.

15.04: <u>Transfer by Lessor -- Release From Liability</u>

In the event Lessor shall sell or transfer the Demised Premises or any part thereof, and as a part of such transaction shall assign its interest as Lessor in and to this Lease, then from and after the effective date of such sale, assignment, or transfer, Lessor shall have no further liability under this Lease to Lessee except as to matters of liability which shall have accrued and are

unsatisfied as of such date, it being intended that the covenants and obligations contained in this Lease on the part of Lessor shall be binding upon Lessor and its successors and assigns only during and in respect of their respective successive periods of ownership. Lessee shall, immediately upon written request from any such assignee, execute and deliver to such assignee an instrument in proper form by which Lessee attorns to said assignee.

15.05: <u>Reservation of Minerals</u>

There is reserved to Lessor the title and exclusive right to all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying said Premises, or that may be produced therefrom, including, without limiting the generality of the foregoing, all petroleum, oil, natural gas and other hydrocarbon substances and products derived therefrom and all geothermal steam or brines which may be produced or derived therefrom, together with the exclusive and perpetual right thereto, without, however, the right to use or penetrate the surface of, or to enter upon said Premises within five hundred (500) feet of the surface thereof, to extricate or remove the same.

672-003-00

ARTICLE XVI

GENERAL PROVISIONS

16.01: <u>Conditions and Covenants</u>

All of the provisions of this Lease shall be deemed as running with the land, and construed to be "conditions" as well as "covenants" as though the words specifically expressing or imparting covenants and conditions were used in each separate provision.

16.02: <u>Waiver of Breach</u>

No failure by either Lessor or Lessee to insist upon the strict performance by the other of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any

such breach or of such covenant, agreement, term or condition. No waiver of any breach shall affect or alter this Lease, but each and every covenant, condition, agreement and term of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach.

16.03: <u>Time of the Essence</u>

Time is of the essence of this Lease, and of each provision thereof.

16.04: <u>Computation of Time</u>

The time in which any act provided by this Lease is to be done is computed by excluding the first day and including the last, unless the last day is a Saturday, Sunday or holiday, and then it is also excluded.

16.05: <u>Unavoidable Delay -- Force Majeure</u>

If either party shall be delayed or prevented from the performance of any act required by this Lease by reason of acts of God, strikes, lockouts, labor troubles, inability to secure materials, restrictive governmental laws, or regulations or other cause, without fault and beyond the reasonable control of the party obligated (financial inability excepted), performance of such act shall be excused for the period of the delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay, provided, however, that nothing in this section shall excuse Lessee from the prompt payment of any rental or other charge required of Lessee except as may be expressly provided elsewhere in this Lease.

16.06: <u>Successors in Interest</u>

Each and all of the covenants, conditions and restrictions in this Lease contained shall inure to the benefit of and shall be binding upon the successors in interest of Lessor, and, subject to the restrictions of Article XII, the authorized encumbrancers, assigns, transferees, subtenants, licensees, and other successors in interest of Lessee.

672-003-00

16.07: **Entire Agreement**

This Lease contains the entire agreement of the parties with respect to the matters covered by this Lease, and no other agreement, statement or promise made by any party, to any employee, officer, or agent of any party, which is not contained in this Lease shall be binding or valid.

16.08: **Partial Invalidity**

If any term, covenant, condition or provision of this Lease is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

16.09: **Relationship of Parties**

Nothing contained in this Lease shall be deemed or construed by the parties or by any third person to create the relationship of principal and agent or of partnership or of joint venture or of any association between Lessor and Lessee, and neither the method of computation of rent nor any other provisions contained in this Lease nor any acts of the parties shall be deemed to create any relationship between Lessor and Lessee, other than the relationship of Lessor and Lessee.

16.10: **Interpretation and Definitions**

The language in all parts of this Lease shall in all cases be simply construed according to its fair meaning and not strictly for or against Lessor or Lessee. Unless otherwise provided in this Lease, or unless the context otherwise requires, the following definitions and rules of construction shall apply to this Lease.

a. **Number and Gender**. In this Lease neuter gender includes the feminine and masculine and the singular number includes plural and the word "person" includes corporation, partnership, firm or association wherever the context so requires.

b. **Mandatory and Permissive**. "Shall," "will," and "agree" are mandatory; "may" is permissive.

672-003-00

c. **Captions**. Captions of the articles, sections and paragraphs of this Lease are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction or meaning of the provisions of this Lease.

d. **Term Includes Extensions**. All references to the term of this Lease or the "Lease Term" shall include any extension of such term.

e. **Land and Premises**. Leased land, land, leased premises, demised premises and premises shall include the improvements to the land.

f. **Parties**. Parties shall include the Lessor and Lessee named in this Lease.

g. **Sublessee**. As used herein, the word "Sublessee" shall mean and include, in addition to a sublessee and a subtenant, a licensee, concessionaire, or other occupancy or user of any portion of the Demised Premises or buildings or improvements thereon.

h. **Buildings**. The word "Building" or "Buildings" includes any and all improvements at any time upon the Demised Premises, now existing thereon or thereafter constructed, and any betterments thereof. In addition to the commonly used meaning of "Building," that term includes all pipes, engines, wiring, ventilating, air conditioning and heating equipment, plumbing, lighting fixtures, swimming pools and any other equipment or machinery used in or about the maintenance or operation of the buildings.

i. **Undertaking**. Wherever reference is made in this Lease to an engagement by Lessee to perform a certain undertaking it shall mean that as to that undertaking or engagement, that Lessee has covenanted for its performance, and the expression "Undertaking," "Undertakes," "Engages," or "Engagement" shall be so construed in each instance.

j. **Assignment**. In any circumstance when an assignment of this Lease is restricted by the terms of this Lease, an assignment

672-003-00

of this Lease includes, but is not limited to, a transfer of fifty-one percent (51%) or more of the stock of the Lessee corporation, if the holder of the Lessee's interest in this Lease be a corporation, but any such transfer consequent upon the death of a stockholder or resulting from a gift by a stockholder to the immediate members of his family shall not be deemed a transfer within the meaning of the foregoing.

k. **Leasehold Mortgage**. The term "Leasehold Mortgage" means a mortgage of Lessee's leasehold interest under this Lease, and includes a Deed of Trust conveying Lessee's leasehold interest under this Lease as security for a construction loan or loans and "Take Out" loan or loans to finance construction or purchase of the improvements to be erected on the Demised Premises.

l. **Leasehold Mortgagee**. The term "Leasehold Mortgagee" means the holder of a Leasehold Mortgage under this Lease, and includes any beneficiary under a Deed of Trust conveying Lessee's leasehold interest under this Lease as aforesaid.

672-003-00

**16.11: Attorney's Fees**

In the event either Lessor or Lessee shall bring any action or proceeding for damages for an alleged breach of any provision of this Lease, including, but not limited to arbitration, to recover rents, or to enforce, protect, or establish any right or remedy of either party, the prevailing party shall be entitled to recover as a part of such action or proceeding reasonable attorney's fees and court costs.

**16.12: Interest**

Any sum accruing to Lessor or Lessee under the provisions of this Lease which shall not be paid when due, unless otherwise provided, shall bear interest at the rate of ten percent (10%) per annum from the date written notice specifying such nonpayment is served on the defaulting party, until paid.

**16.13: Modification**

This Lease is not subject to modification except in writing signed by both parties hereto.

**16.14: Delivery of Rent and Notices -- Method and Time**

a. All rents or other sums, notices, demands, or requests from one party to another may be personally delivered or sent by mail, certified or registered, postage prepaid, to the addresses stated in this section, and shall be deemed to have been given at the time of personal delivery or forty-eight (48) hours after the time of mailing.

b. Any notice which either party may or is required to give to the other shall be given by mailing the same, postage prepaid, sent certified mail, return receipt requested, and deposited in a receptacle for U.S. mail, addressed as hereafter provided:

672-003-00

**Lessor:**

Washoe Development Enterprise
919 Highway 395
Gardnerville, Nevada 89410

**With a copy to:**

Bureau of Indian Affairs
Superintendent, Western Nevada Agency
1677 Hot Springs Road
Carson City, Nevada 89706

**Lessee:**

Carson Valley/Tahoe Self-Storage, L.L.C.
P.O. Box 2010
Stateline, NV 89449

c. Notice of any change in the address of any party shall be given by the party having such change of address to the other parties in the manner set forth above. Once such notice of change of address has been given, all notices shall thereafter be given in accordance with the notice of change of address. Notices given before the actual receipt of the notice of change of address shall not be invalidated by the subsequent change of address.

**16.15: Federal Trust Responsibility**

a. The parties hereby acknowledge that the Leased Premises are held in trust by the United States Department of the Interior, Bureau of Indian Affairs, for the benefit of Lessor. As long as the Demised Premises remain in trust status, all of Lessee's obligations under this Lease, and the obligations of its sureties, are to the United States as well as to Lessor.

b. Nothing contained in this Lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the Leased Premises by the issuance of a fee patent or otherwise during the term of this Lease; however, such termination shall not serve to abrogate this Lease. Lessor and Lessee, and its surety or sureties, shall be notified of any such change in the status of the land.

c. Lessee agrees that it will not use or cause to be used any part of the Demised Premises for any unlawful conduct or purpose.

**16.16: Lessor's Assistance to Lessee's Operations**

a. Lessor agrees to grant Lessee the right to make beneficial use of water rights which Lessor may enjoy as owner of the Demised Premises in amounts reasonably necessary for the operation of the intended Self Storage and R.V. Storage Facility, but all costs associated with the use of such water, including but not limited to exploration, drilling, conveyance, transportation and application and permit fees, shall be borne by Lessee.

b. Lessor agrees that during the term of this Lease, and any extensions thereof, it will not grant to any other person or entity permission to construct or operate, directly or indirectly, on lands owned by Lessor, any Self Storage and R.V. Storage Facility substantially similar to the Self Storage and R.V. Storage Facility contemplated by this Lease within five (5) miles of the Demised Premises.

672-003-00

16.17: Employment of Tribal Members

Lessee agrees to make good faith efforts to employ members of the Washoe Tribe of Nevada and California during all phases of construction of the contemplated Self Storage and R.V. Storage Facility and for operation of the Self Storage and R.V. Storage Facility after construction.

16.18: Tax Benefits for Operating on Tribal Lands

Lessee and Lessor recognize certain tax benefits granted to Lessee by the Internal Revenue Service in the form of accelerated depreciation and credits for the hiring of Tribal members. Lessee shall be entitled to such benefits without any obligation to compensate Lessor therefor.

ARTICLE XVII

ARBITRATION

17.01: American Arbitration Association

If any controversy shall arise between the parties with respect to any of the matters set forth in this Lease and such dispute shall not be resolved by the parties within thirty (30) days after either of the parties shall notify the other of its desire to arbitrate the dispute, then the dispute shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The arbitration shall be a panel of three (3) arbitrators, one of whom must be an attorney at law actively engaged in the practice of his profession for at least ten (10) years, except in those cases where the issue to be decided by the arbitrators involves market values, rental rates or other property valuation matters, in which instance the arbitrators submitted for selection by the association shall be certified as members of the American Institute of Real Estate Appraisers. The arbitrators shall have no power to modify any of the provisions hereof and their jurisdiction is limited accordingly. Each party hereby consents to the entry of judgment

672-003-00

by any court having jurisdiction in accordance with the decision of the arbitration panel. No change in the commercial arbitration rules of the Association which would deprive a party of the right to be represented by counsel, to present evidence, or to cross-examine witnesses presented by the other party shall be effective in any arbitration proceeding arising out of this agreement.

The parties may conduct discovery including but not limited to depositions, requests for admissions, production of documents, interrogatories and inspections in any such arbitration proceeding.

## ARTICLE XVIII

## EXECUTION, RECORDING AND INCORPORATION BY REFERENCE

**18.01:** **Recording**

Neither party shall record this Lease without the written consent of the other party; however, upon the request of either party, the other party shall join in the execution of a memorandum or "short form" of this Lease for the purpose of recordation. The memorandum or short form shall describe the parties, the Demised Premises and the term of this Lease and shall incorporate this Lease by reference.

672-003-00

**18.02:** **Counterparts**

This Lease, consisting of 59 pages, plus Exhibits "A", "B", "C","D", "E", "F" and "G" has been executed by the parties in separate counterparts, each of which shall be deemed to be an original copy.

18.03: <u>Execution</u>

This Lease has been executed by the parties on the dates appearing below at the offices of the Washoe Tribe of Nevada and California.

| LESSOR: | LESSEE: |
|---|---|
| WASHOE DEVELOPMENT ENTERPRISE | HOBO HOT SPRINGS SELF STORAGE, L.L.C. |
| ADDRESS: 919 Highway 395 South<br>Gardnerville, Nevada 89410 | ADDRESS: P.O. Box 2010<br>Stateline, NV 89449 |
| By: E. Whitney Brown<br>E. Whitney Brown<br>Chairman | By: Mark L. Michelsen<br>Mark L. Michelsen,<br>Manager |
| Date: 9-30-99 | Date: 9-3-99 |
| | By: James Fondren<br>James Fondren,<br>Manager |
| | Date: 9/3/99 |

672-0003-00

RECEIVED
2000 JA 27 PM 1:19
LAND TITLES & RECORDS
BUR INDIAN AFFRS
ALBUQ N MEX

**LEASE APPROVAL PURSUANT TO 25 CFR, PART 162**

This lease is approved by the Bureau of Indian Affairs, Secretary of Interior, and the payment of all sums due and owing the Washoe Tribe under the provisions of this lease are to be made to the Washoe Development Enterprise at 919 Highway 395 South, Gardnerville, Nevada 89410, and the Secretary hereby waives the provisions that said payments be made to the Bureau of Indian Affairs. If any dispute should arise between the interpretation or implementation of the lease and the applicable rules and regulations in 25 CFR Part 162, the Code of Federal Regulations shall prevail.

Secretary of the Interior

APPROVAL

Bureau of Indian Affairs
Western Nevada Agency
1677 Hot Springs Road
Carson City, Nevada 89706

ADDRESS

[signature]
Robert Hunter, Superintendent

OCT 0 6 1999

DATE

672-003-00

RECEIVED
2000 JA 27 PM 1:19
LAND TITLES & RECORDS
BUR INDIAN AFFRS
ALBUQ N MEX

Resolution No. 99-06

RECEIVED
2000 JA 27 PM 1:19
LAND TITLES & RECORDS
BUR INDIAN AFFRS
ALBUQ N MEX

**RESOLUTION OF THE GOVERNING BODY**
**OF THE**
**WASHOE DEVELOPMENT ENTERPRISE**

**WHEREAS,** the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 594 as amended), to exercise certain rights of home rule and be responsible for the general welfare of its membership; and

**WHEREAS,** the Washoe Development Enterprise is chartered by the Washoe Tribe of Nevada and California to promote the economic self-determination of the Washoe Tribe, to manage and advance the Tribe's economic development, to manage and coordinate all enterprises, business ventures and other forms of economic development assigned to it by the Tribal Council, and to enter into business relations to raise financing for development; and

**WHEREAS,** the Washoe Development Enterprise has reviewed and approved the proposal by Hobo Hot Springs Self-Storage, L. L. C. to enter into a long-term ground lease for the construction and development of self-storage units on Washoe Tribal land; and

**WHEREAS,** the ground lease evidencing the terms of the agreement by and between Washoe Development Enterprise and Hobo Hot Springs Self-Storage, L. L. C. is complete in terms and conditions.

672-003-00

**NOW, THEREFORE BE IT RESOLVED THAT** the Chairman of the Board of Directors of the Washoe Development Enterprise is hereby authorized to execute the ground lease by and between the Washoe Development Enterprise and Hobo hot Springs Self-Storage, L. L, C,

**CERTIFICATION**

It is hereby certified that the Washoe Development Enterprise Board of Directors is the governing body of the Washoe Development Enterprise, composed of twelve members of whom seven (7) constituting a quorum were present at a meeting duly held on the 28th day of July, 1999, and that the foregoing resolution was adopted by the affirmative vote of 6 for, 0 against, and 1 abstention, pursuant to the authority granted to it by the Washoe Tribe of Nevada and California.

July 28, 1999

Dallas M Byington

DALLAS BYINGTON
SECRETARY/TREASURER
WASHOE DEVELOPMENT ENTERPRISE

Resolution No. 99-WTC-50

**RESOLUTION OF THE GOVERNING BODY**
**OF THE**
**WASHOE TRIBE OF NEVADA AND CALIFORNIA**

**WHEREAS**, the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 594 as amended), to exercise certain rights of home rule and be responsible for the general welfare of its membership; and

**WHEREAS**, the Washoe Development Enterprise is chartered by the Washoe Tribe of Nevada and California to promote the economic self-determination of the Washoe Tribe, to manage and advance the Tribe's economic development, to manage and coordinate all enterprises, business ventures and other forms of economic development assigned to it by the Tribal Council, and to enter into business relations to raise financing for development; and

**WHEREAS**, the Washoe Development Enterprise has reviewed and approved the proposal by Hobo Hot Springs Self-Storage, L. L. C. to enter into a long-term ground lease for the construction and development of self-storage units on Washoe Tribal land, and

**WHEREAS**, the ground lease evidencing the terms of the agreement by and between Washoe Development Enterprise and Hobo Hot Springs Self-Storage, L. L. C. is complete in terms and conditions.

**NOW, THEREFORE BE IT RESOLVED THAT** the Washoe Tribe of Nevada and California hereby approves and adopts the ground lease by and between the Washoe Development Enterprise and Hobo Hot Springs Self-Storage, L. L. C.

672-003-00

CERTIFICATION

It is hereby certified that the Washoe Tribal Council is the governing body of the Washoe Tribe of Nevada and California composed of twelve members of whom 11 constituting a quorum were present at a meeting duly held on the 30th day of September, 1999, and that the foregoing resolution was adopted by the affirmative vote of 7 for, 0 against, and 3 abstentions, pursuant to the authority contained in Article VI, Section 1(h) of the Amended Constitution and Bylaws of the Washoe Tribe of Nevada and California.

September 30, 1999

Carolyn M. Kenton
Carolyn M. Kenton
Secretary Treasurer
Washoe Tribal Council

672-003-00

# EXHIBIT
# "A"

## LEGAL DESCRIPTION

Description of all that certain lot, piece, or parcel of land being within the SW1/4 NW1/4 Section 19, T.14N., R.20E., M.D.B.& M., Douglas County, Nevada and being more particularly described as follows:

> Commencing at the NW 1/16 corner of Section 19; said point being the true point of beginning; thence S. 00°26'41" E, 331.01 feet; thence S 89°54'41" W, 67.03 feet; thence S 14°27'05" W. 222.17 feet; thence along a curve to the right with a radius of 500.00 feet, a tangent length of 44.05 feet, a delta angle of 10°04'09" and arc length of 67.87 feet; thence S 00°26'41" E. 699.21 feet; thence S 89°49'46" W. 732.49 feet; thence N 00°47'18" W, 1328.35 feet; thence N 89°51'13" E, 740.46 feet to true point of beginning.

Containing 22.77 acres +

Basis of bearings: The basis of bearings is the East line of the SW1/4 NW1/4 Section 19, T.14N., R.20E., M.D.H.& M., as shown on the map of division into large parcels for Bill Richter, recorded as Document No. 305075, Douglas County Records.

672-003-00

672-003-00

EXHIBIT
"B"