# EXHIBIT 7

Washoe Development Enterprise Charter

EXHIBIT 7

# CHARTER

# OF THE

# WASHOE DEVELOPMENT ENTERPRISE

A Tribal Government Enterprise
of the
Washoe Tribe of Nevada and California

Adopted and Approved
on
August 9, 1996

# CHARTER

## TABLE OF CONTENTS


| | | |
|---|---|---|
| ARTICLE I: | Name | 1 |
| ARTICLE II: | Creation | 1 |
| ARTICLE III: | Duration | 1 |
| ARTICLE IV: | Business Location | 2 |
| ARTICLE V: | Purpose | 2 |
| ARTICLE VI: | Powers | 2 |
| ARTICLE VII: | Limitations | 4 |
| ARTICLE VIII: | Sovereign Immunity | 5 |
| ARTICLE IX: | Assets | 6 |
| ARCTICLE X: | Property and Net Profits | 6 |
| ARTICLE XI: | Board of Directors | 7 |
| ARTICLE XII: | Officers | 8 |
| ARTICLE XIII: | Budget, Reports, Insurance | 8 |
| ARTICLE XIV: | Duty of Care and Loyalty | 11 |
| ARTICLE XV: | Indemnification | 12 |
| ARTICLE XVI: | Dissolution | 15 |
| ARTICLE XVII: | Tribal law | 15 |
| CERTIFICATION | | 16 |

# CHARTER
## OF THE
# WASHOE DEVELOPMENT ENTERPRISE

## ARTICLE I
### Name

The Washoe Tribe of California and Nevada, a tribal government organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476 ("Tribe"), approves the issuance of this Charter for the Washoe Development Enterprise which shall be governed by a Board of Directors ("Board").

## ARTICLE II
### Creation

The Tribe issues this charter to the Washoe Development Enterprise pursuant to authority vested in the Washoe Tribal Council by Article VI, Section 1 (e) and (g) of the Constitution and Bylaws of the Washoe Tribe of Nevada and California. Under this authority, the Washoe Development Enterprise is chartered as a tribal enterprise to manage the economic affairs of the Tribe and as a subordinate organization for economic purposes. As such, the Washoe Tribal Development Enterprise is an arm and extension of the Tribal Government vested with the powers set forth herein and retains the Washoe Tribe's immunity from suit except to the extent it is expressly waived in accordance with Article VIII herein.

## ARTICLE III
### Duration

The period of duration of the Enterprise shall be perpetual.

## ARTICLE IV

Business Location

The principal place of business of the Enterprise shall be located at the Washoe Tribal Headquarters, Gardnerville, Nevada, or such other location specified by the Tribal Council by resolution.

## ARTICLE V

Purpose

The purpose of the Enterprise shall be:

1. To promote the economic self-determination of the Washoe Tribe and its members for present and future generations.

2. To manage and advance the Tribe's economic development in a business-like manner consistent with the protection of the Tribe's sovereignty.

3. To manage and coordinate all enterprises, business ventures, or other forms of economic development activities or objectives assigned to the Enterprise by the Tribal Council.

4. To enter into business relations or to raise financing in accordance with the powers and limitations set forth in this Charter.

## ARTICLE VI

Powers

The Enterprise shall have the following powers, subject to the limitations set forth in Article VII:

1. To initiate, evaluate and respond to economic development proposals that have potential to benefit the Tribe.

2. To enter into agreements, contracts and business relationships with other persons, businesses, organizations, entities and governments (federal, state, tribal, local, or foreign).

3. To participate in any corporation, partnership, joint venture, enterprise, trust or other business arrangement, foreign or domestic.

4. To establish and maintain banking accounts as needed, separate from the Tribal Council's banking accounts.

5. To borrow money, incur debt, issue bonds or debentures, acquire assets, and encumber assets.

6. To charter corporations (for profit or non-profit) and other business entities or organizations for the purpose of facilitating economic development.

7. To employ legal counsel.

8. To use, maintain, improve and manage real and personal property owned by the Enterprise or such property that the Tribal Council may make available to the Enterprise.

9. To acquire or purchase real or personal property, and to lease or sublease property (including Tribal or Indian property).

10. To manage its financial affairs and to invest any Enterprise funds.

11. To employ, manage and discharge employees, consultants, and agents of the Enterprise.

12. To sue and be sued in accordance with Article VIII.

13. To promulgate and amend its Bylaws, consistent with this Charter.

14. To engage in business activities within or outside of Washoe lands.

## ARTICLE VII

## Limitations

The Enterprise's powers set forth in Article VI are made subject to the following limitations and conditions:

1. The Enterprise may not encumber, lease, or alienate land owned by the Tribe (whether in trust or not) without the prior approval of the Tribal Council by written resolution.

2. Enterprise purchase or acquisition of real property requires the prior approval of the Tribal Council by written resolution.

3. The Enterprise lacks authority to encumber or alienate any type of property owned by the Tribe (including, but without limitation, personal or real property or any revenues, funds, investments, or other Tribal assets), except for property expressly assigned to the Enterprise in accordance with Article X or property where the Tribal Council has consented by written resolution to authorize the encumbrance or alienation of the specific property in question.

4. Agreements between the Enterprise and other governments (federal, state, tribal, local, or foreign) shall require the prior approval of the Tribal Council by written resolution.

5. The Enterprise's authority to charter new corporations or to create new organizations shall require the prior approval of the Tribal Council by written resolution.

6. The Enterprise may not borrow money or incur debt in excess of that approved by the Tribal Council in the Enterprise's annual budget absent the prior approval of the Tribal Council by written resolution.

7. The Enterprise may not amend its Bylaws without the approval of the Tribal Council by written resolution.

## ARTICLE VIII

### Sovereign Immunity

1. The Enterprise is without authority to waive any aspect of the Enterprise's or the Tribe's sovereign immunity from suit except for limited waivers that are authorized as follows:

   (a) The Board and Tribal Council both approve of a limited waiver by written resolution;

   (b) The terms of the limited waiver are set forth in a written instrument approved by the Board and the Tribal Council;

   (c) The Enterprise assets that are subject to the limited waiver are delineated in the written instrument that is approved by the Board and the Tribal Council; and

   (d) The written instrument specifies that the remaining assets of the Enterprise and the Tribe are not subject to the waiver.

2. The Enterprise may condition or limit its waiver of sovereign immunity to specify the court in which any claims may be brought under the waiver and to limit the maximum liability that may be imposed by the limited waiver.

ARTICLE IX

Assets

1. As of the effective date of the this Charter, the assets listed in the Appendix A to this Charter are assigned and pledged to the control and management of the Enterprise. These assets shall be accounted for hereafter in accordance with generally accepted accounting principles and applicable laws.

2. Future assets assigned, transferred or pledged to the Enterprise from the Tribal Council shall be delineated and authorized by a Tribal Council resolution and record of this transfer shall be maintained by the Enterprise.

3. Assets not transferred by Tribal Council resolution remain under the absolute control and supervision of the Tribal Council and are cloaked by the Tribe's sovereign immunity and may not be encumbered, pledged, or alienated without the Tribal Council's approval by written resolution.

ARTICLE X

Surplus Property and Net Profits

1. *Surplus Property.* Any property belonging to the Enterprise which, in the judgement of the Board, is no longer needed by the Enterprise, shall be disposed of by conveying such surplus property to the Tribe. If the Tribal Council elects not to exercise its right to such property within 90 days of receiving notice, the Board may offer such surplus property for public sale, trade, or other appropriate disposal.

2. *Net Profits.* All net profits accumulated by the Enterprise through its economic activities that, in the judgement of the Board, are not needed for capital reinvestment purposes, payment of current and projected future debts, or anticipated operational costs, shall be set aside by the Board in a special interest bearing Enterprise account. Such funds may be transferred from the Enterprise's bank account to the Tribal Council's bank account, in amounts

deemed prudent by the Board, on an annual basis to be used for social, governmental, investment or otherwise as the Tribal Council may decide. The Tribal Council may require the Board to transfer additional net profits to the Tribe or direct that the Enterprise retain such earnings until further direction from the Tribal Council.

## ARTICLE XI

## Board of Directors

1. *Composition.* There shall be twelve members on the Enterprise's Board of Directors appointed by the Tribal Council. Four Directors shall be members of the Tribal Council; four other Directors shall be enrolled members of the Washoe Tribe, and the four remaining Directors shall be from the local business community.

2. *Appointment.* Upon the enactment of this Charter by the Tribal Council and the appointment of its first Board of Directors by the Tribal Council, thereafter four new Directors shall be appointed on an annual basis by the Tribal Council. Appointments shall be made from nominees submitted by the Board or by the Tribal Council in accordance with Section 3 below.

3. *Background.* In making appointments, the Tribal Council must give preference to persons with backgrounds, experience, and expertise in the fields of finance, merchandising, ranching or economic development. The Directors appointed from among the local business community shall be active in the financing, merchandising, or economic development fields.

4. *Staggered Terms.* Each Director shall serve a three year term and may be reappointed to additional terms. In order to bring continuity and consistency to the Board and the Enterprise's operations and projects, staggered Director terms shall be implemented for each Director position. For the purposes of creating the initial staggered terms for the Board of Directors serving at the

time of the adoption of this Charter, the Tribal Council shall appoint all twelve Directors. By random selection or other means, the Tribal Council shall stagger the terms of these twelve Directors by selecting four Directors to be appointed to a three year term; selecting four Directors to be appointed for a two year term; and selecting four Directors to be appointed to a one year term. All selections and appointments shall be Tribal Council resolution.

5. *Removal.* The Tribal Council may remove any or all of the Directors for cause but shall provide any removed Director(s) an explanation of the cause for removal and provide an opportunity for the Director(s) to respond to the grounds for removal.

6. *Vacancies.* All vacancies or resignations on the Board shall be approved by the Tribal Council to fill out the remaining term of the vacant Board seat. The Board may recommend persons to fill any such vacancies.

## ARTICLE XII

## Officers

1. *Composition.* The officers of the Enterprise shall consist of the Chairman, the Vice-Chairman, the Secretary, and the Treasurer. Each officer shall be elected by the Board at the time and in the manner stated in the Bylaws. Any two Offices may be held by the same person, except the offices of the Chairman and the Treasurer.

2. *Removal.* Any officer may be removed by a vote of eight or more of the Board of Directors if removal is in the best interests of the Enterprise.

## ARTICLE XIII

## Budget, Reports, Insurance

1. *Records.* The Enterprise shall keep accurate and complete books and records

of accounts. The Enterprise shall also keep minutes of the meetings of the Board and shall submit copies of any Board minutes to the Tribal Council in a timely fashion.

2. *Annual Budget*. The Enterprise shall establish an annual budget for the Enterprise which shall include an itemization of all anticipated revenues and expenses for the year. This annual budget shall include, but not by way of limitation, revenues and investments, any existing debt, any anticipated borrowing or debt obligations, cost of meetings, staff costs, operational cost, adequate reserves to make appropriate capital improvements, and any other expense associated with the operation of the Enterprise. The annual budget shall be submitted to the Tribal Council for review and approval.

3. *Audit*. The Enterprise shall cause the financial reports to be audited at least once every fiscal year and the results of this audit, or any special audit, shall be submitted to the Tribal Council. Special audits requested by the Tribal Council may be conducted at any time by the Tribal Council at the Tribal Council's expense.

4. *Examine Books*. The Tribal Council shall have the right at any time to appoint a representative to examine, at any reasonable time, the relevant books, records of account, and minutes of the Enterprise. The representative has the right to make copies of such documents.

5. *Monthly Reports*. The Enterprise shall provide to the Tribal Council a monthly report, unless a longer reporting term is requested by a majority of

the Tribal Council. The monthly reports shall contain the profit and loss statement for the period reported on, an analysis of the Enterprise's present cash position, and a description of the Enterprise's most recent and planned activities.

6. *Annual Reports*. The Enterprise shall provide annual reports to the Council within ninety (90) days after the end of the Enterprise's fiscal year. Annual reports shall be drafted in plain language and shall describe:

(a) The business done and intended to be done by the Enterprise;

(b) Any material changes and developments within the organizational structure of the Enterprise since the submission of the last annual report, including the status of personnel and any changes to the personnel policies and procedures;

(c) A description of the competitive conditions, research and development activities, new lines of business, the approximate amount of total sales and revenue, and income (or loss) from each type of Enterprise business;

(d) Any pending legal proceedings or action to which the Enterprise is a party; and

(e) Audited financial statements of the Enterprise, including a consolidated balance sheet together with consolidated statements

of income, income source and any application of funds for each fiscal year.

7. *Insurance*. The Enterprise shall main adequate insurance to protect all Enterprise assets, property, employees, and activities of the Enterprise.

## ARTICLE XIV

## Duty of Care and Loyalty

1. All Enterprise directors, officers, employees and agents have a duty of care and loyalty to the Enterprise. In the duty of care, such persons shall exercise their best business judgment and shall use ordinary care and prudence in their respective service to the Enterprise. In the duty of loyalty, such persons shall be loyal to the Enterprise and shall not subordinate the Enterprise's interests to a personal pecuniary interest.

2. All Enterprise directors, officials, employees and agents shall avoid engaging in any activities which constitute or have the appearance of a conflict of interest between the interests of the Enterprise and their personal pecuniary interests and shall promptly divulge any conflicts of interest to the Board that may arise.

3. The entity with authority to determine whether a Director may be entitled to indemnification under Article XV of the Enterprise's Charter shall take into consideration a Director's violation of the forgoing duty of care or loyalty to the Enterprise in determining whether such Director shall be entitled to indemnification.

## ARTICLE XV

Indemnification

1. The Enterprise shall have the power to indemnify any person who is a director, officer, employee, or agent of the Enterprise against actual and reasonable expenses incurred by such person if the following conditions are met:

(a) Such person was, is, or may become a party to any threatened, pending or completed civil, criminal, administrative or investigative action;

(b) Such person is or was a director, officer, employee, or agent of the Enterprise or is or was serving at the request of the Enterprise as a director, officer, employee, or agent of another corporation, partnership, joint venture, or other subsidiary of the Enterprise when involved in the action for which indemnification is requested or required; and

(c) Such person had to, or will have to, pay attorney's fees, a judgement, a fine or a settlement in dealing with any action described above.

(d) Such person seeking indemnification acted in good faith and in a manner which he or she reasonably believed to be lawful and unopposed within the governance or management of the Enterprise.

(e) The person shall not have acted in a grossly negligent manner or with malicious intent or violated his or her duty of care and

loyalty to the Enterprise as set forth in Article XIV.

(f) With respect to indemnification of a person involved in any criminal action or proceeding, such person had to have no reasonable cause to believe the conduct at issue was unlawful.

2. No presumption of the lack of good faith by the person to be indemnified shall be created upon the termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or a plea of nolo contendere or its equivalent. Nor shall such termination constitute a presumption that the person did not act in a manner which he or she reasonably believed to be unopposed within the governance or management of the Enterprise and to the Enterprise's best interests. With respect to any criminal proceeding and for the purposes for indemnification, the termination described herein does not amount to reasonable cause to believe that the person's conduct was unlawful.

3. Upon a determination that the director, officer, employee or agent has met the applicable standard of conduct set forth Section 1 above, such person may be entitled to indemnification. The entity vested with the authority to make this determination shall be as follows:

(a) By the Board of Directors pursuant to a majority vote of a quorum consisting of Directors who are not party to such an action, suit, or proceeding;

(b) If such a quorum is not attainable or if the Tribal Council so directs, by independent legal counsel in a written opinion; or

(c) By the Tribal Council.

4. Where the determination under Section 3 above has been made that the director, officer, employee or agent has not met the standard of care necessary to receive indemnification, the court in which such action or suit was brought may determine upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person should be entitled to fair and reasonable indemnification for those expenses which the court deems just and proper. If such court ordered indemnification is required, then the Enterprise shall provide the coverage.

5. Notwithstanding the determination of eligibility to receive indemnification under Section 3 above, to the extent that a director, officer, employee, or agent of the Enterprise has been successful on the merits or otherwise in defense of any claim, issue, or matter-therein, he or she shall be indemnified against reasonable expenses (including attorney's fees) actually incurred by him or her.

6. Expenses (including attorney's fees) incurred in defending a civil or criminal action, suit, or proceeding may be paid by the Enterprise in advance of the final disposition of the action, suit or proceeding. Such advancement may be approved and authorized in the manner provided for in Section 3 above and upon receipt of amounts to be paid as submitted by or on behalf of the director, officer, employee, or agent indemnified.

7. Where the Enterprise has agreed to indemnify a person in advance pursuant to Section 6, the Enterprise shall have the option of providing its own legal counsel or defense to the action, or of approving the retainment of the indemnified person's choice of legal counsel.

8. The Enterprise shall also have the option of approving any settlement or disposition of the action for which the Enterprise will ultimately be liable for pursuant to any indemnification provided under this Article.

9. The indemnification provided for by this Article shall not be deemed exclusive of any other rights to which those indemnified may be entitled to under any bylaws, agreement, or vote of the Tribal Council or otherwise. Indemnification herein shall be perpetual in that indemnification shall continue for a person who has ceased to be a director, officer, employee, or agent of the Enterprise. Such indemnification shall also inure to the benefit of the heirs, executors, and administrators of the person indemnified.

## ARTICLE XVI

## Dissolution

1. The Enterprise may be dissolved pursuant to the Tribal Council adopting a resolution to dissolve the Charter of the Enterprise. The Enterprise may only be dissolved by the Tribal Council after providing notice of dissolution to the Enterprise's known creditors and publishing notice of dissolution in local newspapers in general circulation in proximity to Washoe tribal lands.

2. Upon the dissolution of the Enterprise and in the winding up of the Enterprise's affairs, the assets of the Enterprise which remain after payment of, or after the provision for making the payment of, all debts and liabilities of the Enterprise shall be distributed to the Tribal Council or to such other Tribal organization or entity as the Tribal Council may duly designate.

## ARTICLE XVII

## Tribal law

1. The Enterprise is subject to the laws of the Tribe and shall not be immune from suit from actions brought by the Tribal Council.

2. To the extent the Enterprise consents to suit in accordance to Article VIII, all actions that arise regarding the Enterprise and its activities, employees, agents,

and business affairs shall be brought in the Washoe Tribal Court, unless otherwise agreed to in writing.

3. The laws of the Tribe shall apply to any dispute to which the Enterprise may become involved in. Where no Tribal law exists, the Tribal Court may look to applicable Federal law for guidance. If no Tribal or Federal law can be found, the Tribal Court may, upon its sole discretion, look to the laws of the State of Nevada for guidance on how to resolve any particular matter at issue.

## CERTIFICATION

It is hereby certified that the Washoe Tribal Council is the governing body of the Washoe Tribe of Nevada and California and is composed of twelve (12) members of whom 10 constituting a quorum were present at a meeting duly held on the 9 th day of August, 1996, and that the foregoing Charter for the Washoe Development Enterprise was adopted by the affirmative vote of 6 for, 0 against, and 3 abstentions pursuant to the authority contained in Article VI, Section 1 (e) and (g) of the Amended Constitution and Bylaws of the Washoe Tribe of Nevada and California.

August 12, 1996
Date

Carolyn M. Kenton
Secretary Treasurer
WASHOE TRIBAL COUNCIL

**Resolution No. 96-WTC-56**

# RESOLUTION OF THE GOVERNING BODY OF THE WASHOE TRIBE OF NEVADA AND CALIFORNIA

**WHEREAS,** the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 594) as amended, to exercise certain rights of home rule and be responsible for the general welfare of its membership; and

**WHEREAS,** the Washoe Development Enterprise is chartered by the Washoe Tribe of Nevada and California to promote the economic self-determination of the Washoe Tribe and it's members, to manage and advance the Tribe's economic development, to manage and coordinate all enterprises, business ventures and other forms of economic development assigned to it by the Tribal Council, and to enter into business relations to raise financing for development; and

**WHEREAS,** the business affairs of the Washoe Development Enterprise shall be managed by it's Board of Directors, to be appointed by the Washoe Tribal Council; and

**WHEREAS,** the Washoe Tribe of Nevada and California has authorized the Washoe Development Enterprise to adopt rules and regulations for the conduct of their meetings and the management of the Washoe Development Enterprise; and

**WHEREAS,** the Washoe Development Enterprise approved and adopted the attached Bylaws and Charter for the management of the Washoe Development Enterprise on the 24th day of JULY, 1996, subject to approval of the governing body of the Washoe Tribe of Nevada and California.

**NOW, THEREFORE, BE IT RESOLVED THAT** the Washoe Tribe of Nevada and California hereby approves and adopts the attached Bylaws and Charter for the management of the Washoe Development Enterprise.

## CERTIFICATION

It is hereby certified that the Washoe Tribal Council is the governing body of the Washoe Tribe of Nevada and California composed of twelve (12) members of whom 10 constituting a quorum were present at a meeting duly held on the 9th day of AUGUST 1996, and that the foregoing resolutions as adopted by the affirmative vote of 6 for, 0 against, 3 abstentions pursuant to the authority contained in Article VI, Section 1(h) of the Amended Constitution and Bylaws of the Washoe Tribe of Nevada and California.

AUGUST 12, 1996
DATE

CAROLYN M. KENTON
SECRETARY/TREASURER
WASHOE TRIBAL COUNCIL

Resolution No. 96-WDE-02

**RESOLUTION OF THE GOVERNING BODY**
**OF THE**
**WASHOE DEVELOPMENT ENTERPRISE**

**WHEREAS,** the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 594) as amended, to exercise certain rights of home rule and be responsible for the general welfare of its membership; and

**WHEREAS,** the Washoe Development Enterprise is chartered by the Washoe Tribe of Nevada and California to promote the economic self-determination of the Washoe Tribe and its members, to manage and advance the Tribe's economic development, to manage and coordinate all enterprises, business ventures and other forms of economic development assigned to it by the Tribal Council, and to enter into business relations to raise financing for development; and

**WHEREAS,** the business affairs of the Washoe Development Enterprise shall be managed by its Boards of Directors, to be appointed by the Washoe Tribal Council; and

**WHEREAS,** the Washoe Tribe of Nevada and California has authorized the Washoe Development Enterprise to adopt rules and regulations for the conduct of their meetings and the management of the Washoe Development Enterprise; and

**WHEREAS,** it is essential for the Washoe Development Enterprise to adopt a Charter for the management of the Washoe Development Enterprise.

**NOW THEREFORE BE IT RESOLVED THAT** the Washoe Development Enterprise hereby approves and adopts the attached Charter for the management of the Washoe Development Enterprise.

**CERTIFICATION**

It is hereby certified that the Washoe Development Enterprise Board of Directors are the governing body of the Washoe Development Enterprise, composed of 12 members of whom 9 constituting a quorum were present at a meeting duly held on the 24 day of July, 1996, and that the

foregoing resolution was adopted by an affirmative vote of 9 for, 0 against, and 0 abstentions pursuant to the authority granted to it by the Washoe Tribe of Nevada and California.

7-24-96
DATE

Roberta Jones
ROBERTA JONES
SECRETARY/TREASURER
WASHOE DEVELOPMENT
ENTERPRISE

# BYLAWS

# OF THE

# WASHOE DEVELOPMENT ENTERPRISE

*A Tribal Government Enterprise*
*of the*
*Washoe Tribe of Nevada and California*

*Adopted and Approved*
*on*
*August 9*, 1996

# BYLAWS
# OF THE
# WASHOE DEVELOPMENT ENTERPRISE

## ARTICLE I

Organization

1. The Washoe Development Enterprise ("Enterprise") is chartered by the Washoe Tribe of Nevada and California ("Tribe") for the purposes and with the powers and limitations set forth in its Charter.

2. The business and affairs of the Enterprise shall be managed by its Board of Directors ("Board") appointed by the Washoe Tribal Council ("Tribal Council"). The Board shall set policy for the Enterprise and oversee and manage the staff and affairs of the Enterprise.

3. The Board may adopt such rules and regulations for the conduct of their meetings and the management of the Enterprise as they deem necessary and proper. Such rules and regulations must be consistent with the Charter of the Enterprise, these Bylaws, and the laws of the Tribe.

## ARTICLE II

Meetings

1. *Annual Meetings.* An annual meeting of the Board shall be held during the month of January at a place selected by the Board and with notice as set forth below.

2. *Regular Meetings.* Regular meetings shall be held at a time and place selected by the Board for its regularly scheduled meetings with notice as set forth below.

3. *Special Meetings.* Special meetings of the Board may be called at the request of the Chairman of the Board, eight Directors, or the Tribal Council. The person or entity calling the meeting may fix the time and place for holding the special meeting and the notice shall state the purpose of the meeting. Special meetings may be called for any purpose which can not await a regular or annual meeting of the Board.

4. *Notice of Meetings.* Notice of the time and place of all Board meetings shall be provided to each Director and to the Tribal Chairman no more than 30 days and no less than 10 days before such Board meeting. If mailed, such notice shall be deemed delivered when deposited in the United States mail, postage prepaid. If sent by a facsimile machine, such notice shall be deemed delivered when the fax is sent and delivery to the responding facsimile machine is confirmed. If sent by electronic mail (E-mail), notice is deemed delivered when transmitted. The proposed agenda for the meeting shall be included in the notice. Under exigent circumstances, the Board or the Tribal Council may provide less than 10 days notice of a special meeting so long as the Directors and the Tribal Chairman receive actual notice at least two days before the special meeting. If there is a question whether a Director may receive the notice in time, reasonable efforts should be made to notify the Director by telephone of any special meeting.

5. *Waiver of Notice.* The attendance of a Director at an annual, regular, or special meeting of the Board shall constitute a waiver of notice for that Board member for the meeting attended. However, notice shall not be deem waived where the Director attends the meeting for the express purpose of objecting to the transaction of any business because the meeting was not properly called or convened.

6. *Continued Meeting.* A Board meeting agenda that is not completed may be continued and completed at another meeting scheduled within ten days of the original meeting without providing additional written notice so long as all Directors are notified in a reasonable manner about the continued meeting.

7. *Place of Meetings.* The Board or Tribal Council may designate any place, either within or without the Washoe Reservation, as the place for holding annual, regular or special meetings called by the Board. If no designation is made as to where to hold an annual or special meeting, the place of the meeting shall be the principal office of the Enterprise.

## ARTICLE III

## Quorum

At any annual, special or regular meeting of the Board, the attendance of seven Directors shall constitute a quorum for the purposes of transacting Enterprise business. The quorum must be present before any Enterprise business may commence. A Director may participate by telephone and need not be present to satisfy a quorum.

## ARTICLE IV

## Voting

The action taken by the majority of the Directors in attendance at a special, regular or annual meeting of the Board at which a quorum is satisfied shall constitute the official action of the Board. No voting by proxy is allowed. Any Director may submit a verbal or written dissent or explanation for their vote into the record of any meeting, or subsequently filed with the Enterprise Secretary.

## ARTICLE V

## Removal of Director

Any or all of the Directors may be removed from the Board for cause by the Tribal Council. By a vote of eight Directors, the Board may recommend to the Tribal Council that any Director be removed if cause exists. Before forwarding the recommendation to the Tribal Council, the Director facing removal shall be informed of the grounds for removal and be provided with an opportunity to respond to the Board.

## ARTICLE VI

Resignations

A Director may resign at any time by providing written notice to the Chairman of the Board and the Tribal Chairman. Unless otherwise specified in the notice, the resignation shall take effect immediately upon receipt of the notice by the Chairman of the Board and the Tribal Chairman. Acceptance of the resignation by the Board or the Tribal Council shall not be necessary to make the resignation effective.

## ARTICLE VII

Compensation

No salary shall be paid to the Directors or Officers for their services as Directors unless the Tribal Council approves of the salaries by resolution or by approval of the Enterprise's annual budget. By resolution of the Board, however, a fixed monetary sum may be paid to the Directors for their attendance at each annual, regular and special Board meeting together with reasonable expense compensation. Nothing contained herein shall be interpreted to preclude any Director from serving the Enterprise in any other capacity and receiving compensation for such service so long as the arrangement is approved in advance by the Board and the Director does not comprise his or her duty of care and loyalty to the Enterprise.

## ARTICLE VIII

Committees

The Board may, by resolution or official action at a duly called meeting, designate

persons from within or outside its Board to serve on standing or ad hoc committees to carry out the duties and business of the Enterprise. A majority of the members to any Committee shall be comprised of Directors. Committees shall only have authority to make recommendations to the entire Board. No Committee shall have authority to take official actions, speak, or enter into contracts on behalf of the Board or the Enterprise

ARTICLE IX

Officers

1. *Election.* The Officers of the Board shall be elected annually by the Board at the Annual Board Meeting. All Officers shall serve one year terms. There is no limit on the number of terms an Officer may serve. The original Board appointed by the Tribal Council upon its approval of the Charter may elect its officers at its first Board meeting, which Officers shall serve until the next Annual Meeting.

2. *Chairman.* The Chairman (or Chairperson) shall preside over all meetings of the Board. In the absence of an Executive Director or CEO of the Enterprise and with the approval of the Board, the Chairman may generally supervise and control the day-to-day business and internal affairs of the Enterprise. If the Enterprise hires an Executive Director or CEO, such person shall be accountable to the Chairman on the day-to-day activities of the Enterprise. When authorized by the Board and consistent with any approvals required by the Charter, the Chairman may execute deeds, mortgages, bonds, contracts, agreements or other written instruments authorized by the Board. The Chairman shall perform all other duties incidental to the Office of the Chairman and such other duties as the Board may prescribe from time to time.

3. *Vice-Chairman.* In the absence of the Chairman, or upon the Chairman's

departure or inability to act, the Vice-Chairman (or Vice-Chairperson) shall perform the duties of the Chairman. When so acting, the Vice-Chairman shall have all the powers vested in the Chairman. The Vice-President shall perform such other duties as from time to time may be assigned to the Vice-Chairman by the Chairman or by the Board or that may be incidental to the Office of the Vice-Chairman.

4. *Secretary*. The Secretary of the Enterprise shall keep the minutes of the Board meetings and shall ensure that all required notices are duly given in accordance with the requirements of the Charter and these Bylaws. The Secretary shall ensure that the Enterprise's official records are maintained in good order and shall maintain a register of the mailing addresses and phone numbers of each Director. The Secretary shall generally perform all duties incident to the Office of the Secretary and such other duties as the Board or the Chairman may from time to time assign to the Secretary.

5. *Treasurer*. The Treasurer shall assume responsibility for all funds, securities, and accounts of the Enterprise; receive and give receipts for moneys due and payable to the Enterprise collected from any source; deposit all money or funds received in the Enterprise's bank accounts; and generally perform all of the duties incident to the Office of the Treasurer along with such other duties as from time to time may be assigned to the Treasurer by the Chairman or the Board. If required by the Board, the Treasurer shall execute a performance bond for the faithful discharge of the Treasurer's duties. The bond shall be in such sum and with such surety or sureties as the Board shall determine adequate to protect the Enterprise.

6. *Other Officers*. The Board may appoint such other officers not required by the Charter as the Board deems necessary and convenient.

7. *Removal.* Any Officer elected by the Board may be removed by a vote of eight Directors. Removal shall be based upon the Board's judgment that the best interests of the Enterprise would be served by such removal. Any removal provided hereto shall be accomplished at a duly convened Board meeting and the removed Officer shall be provided an opportunity to respond to the grounds for removal.

8. *Vacancies.* Upon the vacancy of any Officer position due to death, resignation, removal, or otherwise, the Board may fill the Officer position for the unexpired term of the office.

## ARTICLE X

Contracts, Loans, Checks and Deposits

1. *Contracts.* Consistent with any limitations contained in the Charter, the Board may authorize any Officer or agents of the Enterprise to enter into any contract or execute and deliver any instrument in the name of or on behalf of the Enterprise. Any contract entered into must comport with the requirements and approvals contained in the Charter regarding sovereign immunity and must specifically identify what Enterprise assets (if any) may be subject to levy of judgment in the event of a finding of Enterprise liability pursuant to the contract entered into. All contracts and agreements made with the Enterprise shall either be executed on the Tribe's trust lands and/or contain a provision stating that the contract is executed on the Tribe's trust lands; provided, however, that the Board or Tribal Council may grant exceptions to this requirement by official action.

2. *Debt.* Unless authorized by the Board and in conformance with requirements

of the Charter, no loans shall be obtained on behalf of the Enterprise and no shall be incurred in the Enterprise's name.

3. *Commercial Paper.* All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Enterprise shall be signed by Enterprise Officers or agents. The Board shall by resolution specify the Officers or agents authorized to sign such checks and commercial paper. All checks and commercial paper issued in the name of the Enterprise shall contain the signature of two authorized Officers or agents of the Enterprise.

4. *Deposits.* Consistent with the Treasurer's duties contained in these Bylaws, all funds of the Enterprise not otherwise engaged shall be deposited from time to time to the credit of the Enterprise in such banks, trust companies or other depositories as the Board may select or direct.

## ARTICLE XI

Fiscal Year

The fiscal year of the Enterprise shall be the calendar year.

## ARTICLE XII

Amendments

These Bylaws may be altered, amended or repealed by the Tribal Council.

# CERTIFICATION

It is hereby certified that the Washoe Tribal Council is the governing body of the Washoe Tribe of Nevada and California and is composed of twelve (12) members of whom 10 constituting a quorum were present at a meeting duly held on the 9 th day of August, 1996, and that the foregoing Charter for the Washoe Development Enterprise was adopted by the affirmative vote of 6 for, 0 against, and 3 abstentions pursuant to the authority contained in Article VI, Section 1 (e) and (g) of the Amended Constitution and Bylaws of the Washoe Tribe of Nevada and California.

August 12, 1996
Date

Carolyn M. Keaton
Secretary Treasurer
WASHOE TRIBAL COUNCIL

Resolution No. 96-WDE-01

**RESOLUTION OF THE GOVERNING BODY OF THE WASHOE DEVELOPMENT ENTERPRISE**

**WHEREAS,** the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 594) as amended, to exercise certain rights of home rule and be responsible for the general welfare of its membership; and

**WHEREAS,** the Washoe Development Enterprise is chartered by the Washoe Tribe of Nevada and California to promote the economic self-determination of the Washoe Tribe and its members, to manage and advance the Tribe's economic development, to manage and coordinate all enterprises, business ventures and other forms of economic development assigned to it by the Tribal Council, and to enter into business relations to raise financing for development; and

**WHEREAS,** the business affairs of the Washoe Development Enterprise shall be managed by its Boards of Directors, to be appointed by the Washoe Tribal Council; and

**WHEREAS,** the Washoe Tribe of Nevada and California has authorized the Washoe Development Enterprise to adopt rules and regulations for the conduct of their meetings and the management of the Washoe Development Enterprise; and

**WHEREAS,** it is essential for the Washoe Development Enterprise to adopt Bylaws for the management of the Washoe Development Enterprise.

**NOW THEREFORE BE IT RESOLVED THAT** the Washoe Development Enterprise hereby approves and adopts the attached Bylaws for the management of the Washoe Development Enterprise.

**CERTIFICATION**

It is hereby certified that the Washoe Development Enterprise Board of Directors are the governing body of the Washoe Development Enterprise, composed of 12 members of whom 9 constituting a quorum were present at a meeting duly held on the 24 day of July, 1996, and that the

foregoing resolution was adopted by an affirmative vote of 9 for, 0 against, and 0 abstentions pursuant to the authority granted to it by the Washoe Tribe of Nevada and California.

7-24-96
DATE

Roberta Jones
ROBERTA JONES
SECRETARY/TREASURER
WASHOE DEVELOPMENT
ENTERPRISE

**Resolution No. 49-WTC-2003**

**RESOLUTION OF THE GOVERNING BODY**

**OF THE**

**WASHOE TRIBE OF NEVADA AND CALIFORNIA**

**WHEREAS,** the Washoe Tribe of Nevada and California is organized under the provisions of the Indian Reorganization Act of June 18, 1934 (48 Stat. 59) as amended, to exercise certain rights of home rule and be responsible for the general welfare of its membership; and,

**WHEREAS,** the government of the Washoe Tribe of Nevada and California was established to promote the economic and social welfare of the Tribal members and our descendents; and,

**WHEREAS,** pursuant to Article VI(e) of the Constitution of the Washoe Tribe, the Tribal Council has the power and duty to manage all economic affairs and enterprises of the Washoe Tribe; and

**WHEREAS,** the Washoe Development Enterprise (WDE) is a subordinate organization of the Tribal Government established to promote the economic self-determination of the Washoe Tribe and its members and to advance the Tribe's economic development in a business-like manner consistent with the protection of the Tribe's sovereignty; and,

**WHEREAS,** the Washoe Tribal Council has found several examples of serious mismanagement, including qualifications noted in the 2000 and 2001 audits and the 2002 WDE Financial Statement; failure to regularly submit adequate monthly and annual reports; failure to submit annual budgets for Tribal Council approval; and failure to implement adequate internal controls, and failure to maximize the economic potential of the Tribal assets assigned to WDE; and

**WHEREAS,** pursuant to Article XVI of the WDE Charter, the Tribal Council retains the authority to dissolve the charter of the enterprise;

**NOW THEREFORE BE IT RESOLVED,** that the Tribal Chairman is directed to provide notice of dissolution of WDE to all known creditors of WDE and to cause notice of such dissolution to be published in local newspapers in general circulation in proximity to Washoe Tribal lands.

**NOW THEREFORE BE IT FURTHER RESOLVED,** that, following such notice, the dissolution of the Charter of the Washoe Development Enterprise shall be complete and effective by August 26, 2003 (60 days from the date of this resolution).

**CERTIFICATION**

It is hereby certified that the Washoe Tribal Council is the governing body of the Washoe Tribe of Nevada and California, composed of **twelve (12)** members of whom **eleven (11)** constitutes a quorum were present at a meeting duly held on the 27th day of **June, 2003,** and the foregoing resolution was adopted by the affirmative vote of **8 for, 2 against, 1 abstention,** pursuant to the authority contained in Article VI, Section 1(h) of the amended Constitution and Bylaws of the Washoe Tribe of Nevada and California.

**July 2, 2003**
**Date**

Carolyn M. Kenton

**Carolyn M. Kenton**
**Secretary/Treasurer**
**Washoe Tribal Council**