# EXHIBIT 14

Demand for Arbitration

EXHIBIT 14

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐. There is no additional administrative fee for this service.

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | | |
|---|---|---|
| Name of Respondent: Washoe Development Corporation | | |
| Address: 3264 S. Sunridge Drive | | |
| City: Minden | State: Nevada | Zip Code: 89423 |
| Phone No.: (775) 265-8600 | Fax No.: | |
| Email Address: wloomis@wdc-washoe.com | | |
| Name of Representative (if known): Kristin P. Housh | | |
| Name of Firm (if applicable): Sheppard, Mullin, Richter & Hampton LLP | | |
| Representative's Address: 12275 El Camino Real, Suite 100 | | |
| City: San Diego | State: California | Zip Code: 92130 |
| Phone No.: 858.720.8900 | Fax No.: 858.509.3691 | |
| Email Address: khoush@sheppard.com | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

Claimants Hobo Hot Springs Self Storage, LLC and Carson Valley/Tahoe Self Storage, LLC (collectively, "Self Storage" or "Claimants") hereby submit this demand for arbitration (the "Demand") against Respondent Washoe Development Corporation ("WDC") due to WDC's failure to provide its appraisal and failure to pay the purchase amount as required by the Parties' lease agreement, as amended.

Dollar Amount of Claim: $ 34,300,000.00

Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☐ Punitive/Exemplary
☐ Other:

Amount enclosed: $ 15,930 (filing fee paid via credit card)

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Experience with commercial property and lease disputes.

Hearing locale: Nevada

*(check one)* ☑ Requested by Claimant ☐ Locale provision included in the contract

***Please visit our website at www.adr.org/support to file this case online.***
***AAA Customer Service can be reached at 800-778-7879.***

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | | |
|---|---|---|
| Estimated time needed for hearings overall: hours or 7 days | | |
| Type of Business: Claimant: Limited Liability Corporations | Respondent: Corporation | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? No | | |
| Signature (may be signed by a representative): /s/ Paloma Scheiferstein | Date: 6/5/2026 | |
| Name of Claimant: Carson Valley/Tahoe Self Storage, LLC and Hobo Hot Springs Self Storage, LLC, | | |
| Address (to be used in connection with this case): Snell & Wilmer L.L.P., 1700 South Pavilion Center Drive, Suite 700 | | |
| City: Las Vegas | State: Nevada | Zip Code: 89135 |
| Phone No.: | Fax No.: | |
| Email Address: | | |
| Name of Representative: Paloma Scheiferstein; Ed J. Hermes; Alex L. Fugazzi | | |
| Name of Firm (if applicable): Snell & Wilmer L.L.P. | | |
| Representative's Address: 1700 South Pavilion Center Drive, Suite 700 | | |
| City: Las Vegas | State: Nevada | Zip Code: 89135 |
| Phone No.: 602.382.6000 | Fax No.: 602.382.6070 | |
| Email Address: pscheiferstein@swlaw.com; ehermes@swlaw.com; afugazzi@swlaw.com | | |
| To begin proceedings, **please file online at www.adr.org/fileonline**. You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee. | | |

Ed J. Hermes, Arizona Bar No. 030529
Alex L. Fugazzi, Nevada Bar No. 009022
Paloma M. Scheiferstein, Arizona Bar No. 035672
SNELL & WILMER LLP
1700 South Pavilion Center Drive
Suite 700
Las Vegas, Nevada 89135
Telephone: 602.382.6000
Facsimile: 602.382.6070
Email: ehermes@swlaw.com
afugazzi@swlaw.com
pscheiferstein@swlaw.com

*Attorneys for Claimants Carson Valley/Tahoe Self Storage, LLC and Hobo Hot Springs Self Storage, LLC*

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Carson Valley/Tahoe Self Storage, LLC and Hobo Hot Springs Self Storage, LLC,<br><br>Claimants,<br><br>v.<br><br>Washoe Development Corporation,<br><br>Respondent. | AAA No.<br><br>**DEMAND FOR ARBITRATION** |

Claimants Hobo Hot Springs Self Storage, LLC and Carson Valley/Tahoe Self Storage, LLC (collectively, "Self Storage" or "Claimants") hereby submit this demand for arbitration (the "Demand") against Respondent Washoe Development Corporation ("WDC") due to WDC's failure to timely provide its appraisal, as required by the Parties' lease agreements, as amended, and WDC's unequivocal repudiation of its mandatory purchase obligation. By letter dated April 1, 2026, WDC refused to provide its required appraisal and disclaimed any obligation to pay the contractually required purchase price and instead proposed either an undefined "Transition Payment" or, in the alternative, demanded that Self Storage vacate the land, execute a quitclaim deed, and relinquish the property together with the extensive improvements made by Self Storage. Neither proposal finds support in the parties' lease agreements or amendments; to the contrary,

SNELL & WILMER

both are in direct violation of the express terms of the Ground Leases. Moreover, WDC's failure to timely disclose its appraisal has deprived Self Storage of the information necessary to evaluate whether it would be more advantageous to exercise its contractual option to extend the leases for an additional twelve years—an election whose deadline must be extended until WDC is in compliance with its obligations under the Ground Leases. Claimants allege as follows:

**INTRODUCTION TO NATURE OF THE DISPUTE**

1. Claimants submit this Demand against WDC, as successor in interest to Washoe Development Enterprise, pursuant to the arbitration provisions contained in Article XVIII of Ground Lease No. B-206 ("Lease No. B-206") and Article XVII of Ground Lease No. B-224 ("Lease No. B-224"), as reaffirmed and incorporated by the amendments to both Lease No. B-206 and Lease No. B-224 executed on or about March 18, 2025 (the "2015 Amendments") (collectively, the "Ground Leases").

2. The Ground Leases are binding and enforceable agreements.

3. This dispute arises out of WDC's refusal to honor its mandatory contractual obligation to purchase Self Storage's business, improvements, and associated assets upon the expiration of the Ground Leases, its failure to comply with the binding appraisal disclosure process established in the Ground Leases for determining the purchase price, and its withholding of the very information Self Storage needs to make a fundamental business decision—namely, whether to accept the purchase price or instead elect to extend the Ground Leases for an additional twelve years. *See* 2015 Amendments.

4. WDC's refusal to disclose its appraisal has concrete and material consequences for Self Storage. Self Storage has submitted its own appraisal valuing the business at $34,300,000. If WDC's appraisal arrives at a materially lower figure, two risks follow that bear directly on whether Self Storage would be better served by extending the Ground Leases rather than accepting a buyout: first, a wide disparity between appraisals would make protracted and costly arbitration proceedings virtually certain before any purchase price is finalized; and second, the arbitration panel could ultimately adopt a



SNELL & WILMER

valuation significantly below Self Storage's appraisal, which may be a figure that proves less favorable than the value Self Storage would realize by extending the Ground Leases for another twelve years and deferring the purchase to the end of that period. Without WDC's appraisal in hand, Self Storage cannot weigh these alternatives and is effectively prevented from making an informed election.

5. WDC's failure to timely provide its appraisal carries a direct and independently dispositive contractual consequence. Under Section 2.03(2) of Lease No. B-206 and Section 2.03(b) of Lease No. B-224, "[t]he failure of either the Lessor or Lessee to appoint an appraiser within the time allowed shall be deemed equivalent to appointing the appraiser appointed by the other party." More than thirty days have elapsed since Self Storage submitted its appraisal to WDC, and WDC has failed to submit a competing appraisal. Accordingly, under the express terms of the Ground Leases, WDC's failure to timely participate in the appraisal process is deemed equivalent to adopting the appraisal submitted by Self Storage, and Self Storage's appraised value of $34,300,000 constitutes the binding purchase price.



**PARTIES AND JURISDICTION**

6. Carson Valley/Tahoe Self-Storage, LLC ("CVTSS") is a Nevada limited liability company doing business in Douglas County, Nevada.

7. Hobo Hot Springs Self Storage, LLC ("Hobo") is a Nevada limited liability company doing business in Douglas County, Nevada.

8. WDC is a corporation and successor in interest to Washoe Development Enterprise, doing business in Nevada.

9. The Ground Leases contain clear, unequivocal, and mutually agreed to binding arbitration clauses requiring that disputes arising between the parties be resolved in a binding manner through arbitration administered by the American Arbitration Association ("AAA").

10. Article XVIII, Section 18.01 of Lease No. B-206 provides: "If any controversy shall arise between the parties with respect to any of the matters set forth in

this Lease and such dispute shall not be resolved by the parties within thirty (30) days after either of the parties shall notify the other of its desire to arbitrate the dispute, then the dispute shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction."

11. Article XVII, Section 17.01 of Lease No. B-224 contains an identical provision. The 2015 Amendments to both Ground Leases do not in any way modify these arbitration provisions. The 2015 Amendments expressly state: "the parties hereby reaffirm [the Lease], with amendments, in all particulars including all paragraphs and provisions not inconsistent with the amendments that follow." Further, the 2015 Amendments provide that "[t]he remainder of the terms and conditions of [the Lease] not referenced herein or affected hereby shall remain unchanged, are hereby incorporated by reference herein, and shall remain in full force and effect except as amended herein." The arbitration provisions are not referenced in or affected by the 2015 Amendments and therefore remain in full force and effect.

12. Both provisions further specify that arbitration shall be conducted before a panel of three arbitrators. In cases involving market values, rental rates, or other property valuation matters, the arbitrators submitted for selection by the AAA shall be certified as members of the American Institute of Real Estate Appraisers.

**FACTUAL ALLEGATIONS**

13. On August 28, 1996, Washoe Development Enterprise (WDC's predecessor) entered into Lease No. B-206 with Carson Valley/Tahoe Self Storage, LLC for the development and operation of a self-storage facility on tribal land held in trust for the Washoe Tribe of Nevada and California in Douglas County, Nevada. Lease No. B-206 is attached as **Exhibit A**.

14. Lease No. B-206 was approved by the Bureau of Indian Affairs ("BIA") on December 18, 1996.

15. On September 30, 1999, Washoe Development Enterprise entered into

SNELL & WILMER

Lease No. B-224 with Hobo Hot Springs Self Storage, LLC for the development and operation of a self-storage and R.V. storage facility on adjacent tribal land. Lease No. B-224 is attached as **Exhibit B**.

16. Lease No. B-224 was approved by the BIA on or about October 6, 1999.

17. On or about March 18, 2015, with the approval of the Washoe Tribal Council (Resolution No. 2015-WTC-09), the parties executed the 2015 Amendments. WDC submitted the 2015 Amendments to the BIA for approval. The 2015 Amendments expressly reaffirm the Ground Leases "in all particulars including all paragraphs and provisions not inconsistent with the amendments that follow," and provide that all terms and conditions not referenced therein "shall remain unchanged, are hereby incorporated by reference herein, and shall remain in full force and effect except as amended herein." The 2015 Amendments are attached as **Exhibit C**.

18. The Amendment to Lease No. B-206 extended the lease term to expire at midnight on October 5, 2026. *See* Exhibit C.

19. The Amendment to Lease No. B-224 likewise extended the lease term for twelve years from the original expiration date, commencing on October 6, 2014 and expiring at midnight on October 5, 2026. *See* Exhibit C.

20. The 2015 Amendments also granted Self Storage the option to extend the lease terms for an additional twelve (12) years beyond the current expiration date, subject to the terms and conditions of Section 2.02 of the Ground Leases. The original Section 2.02 of Lease No. B-206 had provided for a fifteen (15) year extension, and the original Section 2.02 of Lease No. B-224 had provided for a twenty-five (25) year extension. The 2015 Amendments superseded those periods with the twelve-year term while retaining the procedural requirements for exercising the option, including the notice deadlines discussed below.

21. The 2015 Amendments also revised the appraisal methodology for determining the purchase price. Section 2.03 was amended to provide that "the Lessor's purchase price will be the value of the business as determined by two (2) MAI (Member

SNELL & WILMER

of the Appraisal Institute) appraisers, selected individually by each party." Amendment to Lease No. B-206 at § 2.03(2); Amendment to Lease No. B-224 at § 2.03(b). If the two appraisers agree on value, the agreed value is binding. If the difference in appraised value is less than $500,000, the difference is split evenly. If the difference exceeds $500,000, the appraisers select a third appraiser to resolve the difference, with costs split evenly between Lessor and Lessee.

22. Article 2.04 of both Ground Leases establishes a mandatory purchase obligation. Lease No. B-206 at § 2.04; Lease No. B-224 at § 2.04.

23. Upon expiration of the lease or any extension thereof, "in order to compensate Lessee for the value of improvements made upon Lessor's property, and in consideration to Lessor for allowing Lessee's business to operate on Lessor's land during the period of the Lease, Lessor shall purchase from Lessee the then existing business opportunity on the Leased Premises, including improvements placed on the Leased Premises by Lessee, for a price to be determined by, and in a manner consistent with, §2.03 above." Lease No. B-206 at § 2.04; Lease No. B-224 at § 2.04(b).

24. This obligation is not discretionary. The use of "**shall purchase**" creates a mandatory duty.

25. Section 2.03 of both Ground Leases specifies two alternative methods by which the Lessor may tender payment. Lease No. B-206 at §2.03(4); Lease No. B-224 at §2.03(d). First, the Lessor may deliver the full purchase price to the Lessee within thirty (30) days of the date of submission of the last appraisal report. In the alternative, the Lessor may tender an amount equal to thirty percent (30%) of the purchase price, together with a properly executed promissory note in the form of Exhibit B to each Ground Lease, secured by the assets of the business and evidencing the following terms: the balance owing in monthly installments of both principal and interest amortized over a period of fifteen (15) years, with interest calculated on an adjustable rate basis equal to the prime rate (as determined by the Bank of America NT&SA-San Francisco) plus two percent (2%), but in no event shall the interest rate be lower than seven percent (7%) per annum

SNELL & WILMER

or greater than twelve percent (12%) per annum, with the principal balance due and payable in ten (10) years, and no prepayment penalty. Lease No. B-206 at §2.03(4); Lease No. B-224 at §2.03(d).

26. Importantly, the 2015 Amendments added express conditional surrender provisions to both Ground Leases, providing that "Lessee shall surrender the improvements when the down payment or purchase price is paid by Lessor to Lessee. Until same occurs, Lessee shall continue to pay rent." Amendment to Lease No. B-206 at §15.01(a); Amendment to Lease No. B-224 at §14.01(a).

27. Self Storage's obligation to surrender the premises is expressly contingent upon WDC first tendering one of these two forms of payment. Until WDC pays, Self Storage has the contractual right to remain in possession and continue operating.

28. Section 2.02 of the Ground Leases grants Self Storage an option to extend the lease term. Section 2.02 of Lease No. B-224 requires that Lessee exercise the extension option by providing Lessor written notice "at least one hundred and twenty (120) days before the last day of the term." Section 2.02 of Lease No. B-206 requires such notice "at least thirty (30) days before the last day of the term." Self Storage's ability to make an informed decision regarding whether to exercise the extension option or instead accept the purchase price upon lease expiration is directly dependent upon knowing WDC's appraised value of the business. WDC's refusal to provide its appraisal has deprived Self Storage of the information necessary to evaluate this choice.

29. During the nearly thirty-year term of the Ground Leases, Self Storage has made substantial capital investments and improvements on the real property subject to each Ground Lease (the "Leased Premises") in reliance on the Lease terms, operated its facilities in full compliance with the Ground Leases, and paid considerable rent throughout the term. Self Storage has fully performed its obligations, including operating both facilities as integrated self-storage businesses with approximately 1,500 customer contracts.

30. In compliance with the appraisal provisions of Section 2.03, Self Storage

SNELL & WILMER

retained Daniel A. Leck, MAI, Certified General Appraiser (NV Certificate #A.0000043-CG), to prepare an appraisal of the leasehold interests.

31. The appraisal, with an effective date of December 1, 2025, concluded that the "As Is" leasehold fair market value of the two properties, evaluated as one consolidated business operation, is $34,300,000. The Appraisal Report is attached as **Exhibit D**.

32. The valuation methodology followed the contractual framework: the appraiser analyzed the three-year income history (2022-2024) and projected the net operating income forward by 2.75% to arrive at a stream of expected net income of $2,397,522, which was then capitalized at a rate of 5.50% using the direct capitalization method, yielding an overall fee simple property value of $43,500,000. The concurrent appraised contribution value of the underlying tribal lands was determined to be $9,200,000. Subtracting the land value from the overall property value produced a leasehold interest value of $34,300,000. *See* Exhibit D.

33. Self Storage shared its appraiser's valuation and a complete copy of the appraisal report with WDC in compliance with the terms of the leases.

34. WDC likewise retained and appraiser who performed an appraisal of the leased property.

35. However, WDC refused to provide a copy of its appraisal with the Claimants in violation of the Leases.

36. On April 1, 2026, WDC sent a letter to Self Storage stating that its own independent appraisal "does not support the valuation range proposed by Self Storage's appraisal" and that payment "would not make continuation of the business by WDC financially viable, nor would it represent a sound use of tribal resources." The April 1, 2026 Letter is attached as **Exhibit E**. Simply put, WDC appears unwilling to accept its own appraiser's value of the business and pay that amount to Self Storage as required under the Lease.

37. WDC further stated it had identified "conflicting provisions" of the leases



SNELL & WILMER

although WDC declined to elaborate on what those "conflicting provisions" were. *See* Exhibit E.

38. Rather than complying with its contractual obligations and provide a copy of its own appraisal, WDC proposed only a vaguely defined "Transition Payment" expressly made "without admission of any obligation on WDC's part, whether under the Ground Leases or otherwise." WDC further demanded that, if Self Storage did not accept such terms, it should vacate the land, execute a quitclaim deed, and remove all personal property. Both of these conditions are violative of the Ground Leases.

39. WDC's demand that Self Storage vacate the premises is directly contrary to the express terms of the 2015 Amendments, which provide that "Lessee shall surrender the improvements when the down payment or purchase price is paid by Lessor to Lessee. Until same occurs, Lessee shall continue to pay rent." Amendment to Lease No. B-206 at §15.01(a); Amendment to Lease No. B-224 at §14.01(a).

40. WDC has no contractual right to demand surrender of the premises absent tendering the full purchase price or the required down payment with a conforming promissory note as specified in Section 2.03. Lease No. B-206 at §2.03(4); Lease No. B-224 at §2.03(d).

41. On April 17, 2026, Self Storage's counsel responded, demanding that WDC provide complete copies of all appraisal reports within thirty days as required by the Ground Leases, and placing WDC on notice that failure to do so would constitute a breach of contract. The April 17, 2026 Letter is attached as **Exhibit F**.

42. On May 15, 2026, WDC's counsel acknowledged receipt of the April 17, 2026 letter but provided no substantive response, stating only that she was "in the process of getting up to speed" and would "provide a substantive response in due course." The May 15, 2026 Letter is attached as **Exhibit G**

43. To date, more than thirty days have elapsed since Self Storage's demand, and WDC has failed to provide its appraisal reports, failed to comply with the mandatory appraisal mechanism, and has expressed its clear intention not to honor its purchase

obligation under Section 2.04 of the Ground Leases. The parties have been unable to resolve this dispute within thirty days, triggering the right to arbitration under the Ground Leases.

**FIRST CAUSE OF ACTION**

**(Anticipatory Breach of Contract—Failure to Comply with Mandatory Purchase Obligation (Section 2.04))**

44. Self Storage realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

45. Self Storage and WDC have valid and enforceable agreements, the Ground Leases, wherein WDC has an unconditional obligation under Section 2.04 of both Ground Leases to purchase from Self Storage the then-existing business opportunity on the Leased Premises, including all improvements, for a price determined in accordance with Section 2.03.

46. Although the Ground Leases do not expire until October 5, 2026, and accordingly the payment obligation has not yet come due, WDC has expressly and unequivocally communicated its intention not to honor this obligation. In its April 1, 2026 Letter, WDC stated that payment of the purchase price "would not make continuation of the business by WDC financially viable, nor would it represent a sound use of tribal resources," and instead proposed arrangements that expressly disclaim "any obligation on WDC's part, whether under the Ground Leases or otherwise." WDC further demanded that Self Storage vacate the Leased Premises, execute a quitclaim deed, and remove all personal property—conditions that are directly contrary to the express terms of the Ground Leases.

47. WDC's unequivocal refusal to perform constitutes an anticipatory repudiation of the Ground Leases.

48. As a direct and proximate result of WDC's anticipatory breach and repudiation, Self Storage has suffered, and will continue to suffer, damages, the exact amount of which to be determined at arbitration, including attorneys' fees and costs.



SNELL & WILMER

SNELL & WILMER

**SECOND CAUSE OF ACTION**

**(Breach of Contract—Failure to Timely Participate in and Complete the Appraisal Process (Section 2.03))**

49. Self Storage realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

50. Self Storage and WDC have valid and enforceable agreements, the Ground Leases, wherein the 2015 Amendments require that WDC's purchase price be determined by two MAI appraisers, one selected by each party.

51. Upon completion of the appraisals, WDC is required to present Self Storage with complete copies of all appraisal reports.

52. WDC has refused to provide its appraisal report to Self Storage despite clear demand.

53. More than thirty days have elapsed since Self Storage's April 17, 2026 Letter demanding the appraisal reports, and WDC has still failed to provide them.

54. Under Section 2.03(2) of Lease No. B-206 and Section 2.03(b) of Lease No. B-224, "[t]he failure of either the Lessor or Lessee to appoint an appraiser within the time allowed shall be deemed equivalent to appointing the appraiser appointed by the other party." This provision was not amended or modified by the 2015 Amendments and remains in full force and effect by virtue of the reaffirmation clause in the 2015 Amendments.

55. WDC's failure to timely provide its appraisal and to participate in good faith in the binding appraisal mechanism constitutes a separate and independent breach of the Ground Leases.

56. As a direct and proximate result of WDC's breach, Self Storage has suffered, and will continue to suffer, damages, the exact amount of which to be determined at arbitration, including attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

57. Self Storage realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

58. Under generally applicable contract law, every contract includes an implied covenant of good faith and fair dealing, including the Ground Leases at issue here.

59. WDC's conduct, including its refusal to provide its appraisal, its assertion of vague and unspecified "legal concerns" to excuse performance, and its attempt to substitute an ad hoc "transition payment" for the contractually mandated purchase price, frustrates Self Storage's rights under the Ground Leases and deprives Self Storage of the benefit of its bargain.

60. WDC's actions have deprived Self Storage of its benefits under the Ground Leases, and Self Storage has been deprived of the benefit it reasonably expected.

61. As a direct and proximate result of WDC's breach of the covenant of good faith and fair dealing, Self Storage has suffered, and will continue to suffer, damages, the exact amount of which to be determined at arbitration, including attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(In the Alternative, Estoppel Based on Prevention of Performance (Section 2.02))**

62. Self Storage realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63. Section 2.02 of Lease No. B-224 requires that Lessee exercise its option to extend the lease by providing written notice at least one hundred and twenty (120) days before the last day of the term. Section 2.02 of Lease No. B-206 requires such notice at least thirty (30) days before the last day of the term. With the Ground Leases expiring on October 5, 2026, these deadlines are imminent.

64. Self Storage's ability to make an informed decision regarding whether to exercise the extension option is directly dependent upon knowing the value that WDC's appraisal assigns to the business. Without this information, Claimants cannot

SNELL & WILMER

meaningfully evaluate whether it is more advantageous to accept the purchase price upon lease expiration or to extend the leases for an additional twelve years and defer the buyout until the end of the extension period.

65. WDC's failure to provide its appraisal—information it is contractually obligated to furnish—is the direct and proximate cause of Self Storage's inability to make this election within the timeframes contemplated by the Ground Leases.

66. Under Nevada law, "an individual who voluntarily prevents the occurrence of a condition established for his or her benefit is estopped from seeking relief from a contract on the grounds that the condition precedent to his obligation failed to occur." *Broussard v. Hill*, 100 Nev. 325, 330, 682 P.2d 1376, 1379 (1984). Moreover, where performance within a specified time is a condition precedent to another party's obligation, and the non-performing party "has been caused to delay his performance beyond the specified time by the request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay." *Goldston v. Bandwidth Tech. Corp.*, 98 Nev. 564, 569–70, 655 P.2d 519, 523 (1982) (citation omitted); *NGA #2 Liab. Co. v. Rains*, 113 Nev. 1151, 1161–62, 946 P.2d 163, 169–70 (1997) (applying these principles where a party's failure to cooperate prevented the other party from meeting a contractual deadline). The breaching party "cannot use the plaintiff's failure to perform on time as a defense." *Goldston*, 98 Nev. at 570, 655 P.2d at 523.

67. Accordingly, to the extent the Section 2.02 notice deadlines expire before WDC provides its appraisal reports, Self Storage is entitled to a declaration that WDC is estopped from asserting that Self Storage's deadline to exercise its option to extend the Ground Leases has lapsed, and that Self Storage retains the right to exercise that option for a reasonable period after WDC provides its appraisal reports.

68. This Cause of Action is pleaded in the alternative. If the arbitration panel determines that WDC's failure to timely provide its appraisal triggers the contractual consequence under Section 2.03, deeming Self Storage's appraisal to be the binding value, then this alternative claim would become moot because the purchase price would

SNELL & WILMER

be established. However, should the panel decline to apply that remedy, Self Storage should not be penalized for WDC's obstruction of the very process upon which an informed extension election depends.

**FIFTH CAUSE OF ACTION**

**(Declaratory Judgment)**

69. Self Storage realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70. Self Storage and WDC have an ongoing dispute concerning their respective rights and obligations under the Ground Leases, including but not limited to the appraisal and purchase provisions set forth in §§ 2.03 and 2.04 and the conditional-surrender provisions added by the 2015 Amendments.

71. Self Storage is entitled to declarations that:

a) WDC is bound by the mandatory purchase obligation in § 2.04 of each Ground Leases, with the purchase price to be determined in a manner consistent with § 2.03.

b) WDC must participate in good faith in the § 2.03 appraisal mechanism, including presenting Self Storage with complete copies of all appraisal reports.

c) WDC's failure to timely provide its appraisal within the time allowed triggers the contractual consequence of Section 2.03(2) of Lease No. B-206 and Section 2.03(b) of Lease No. B-224, such that WDC's failure is deemed equivalent to adopting the appraiser appointed and the appraisal submitted by Self Storage, and Self Storage's appraised value of $34,300,000 constitutes the binding purchase price.

d) Self Storage is entitled to continued possession and is not required to surrender the improvements of the Leased Premises until WDC tenders the full purchase price or the required 30%

SNELL & WILMER

down payment together with a conforming promissory note.

e) In the alternative, to the extent the Section 2.02 notice deadlines expire before WDC provides its appraisal reports, WDC is estopped from asserting that Self Storage's deadline to exercise its option to extend the Ground Leases has lapsed, and Self Storage retains the right to exercise that option for a reasonable period after WDC provides its appraisal reports.

72. Declaratory relief will reduce uncertainty regarding the parties' rights and obligations moving forward.

**PRAYER FOR RELIEF**

WHEREFORE, Self Storage respectfully requests that the arbitration panel award the following relief:

A. An arbitration award in Self Storage's favor on all claims contained herein.

B. A declaration that WDC is bound by the mandatory purchase obligation in § 2.04 of the Ground Leases.

C. A declaration that WDC's failure to timely provide its appraisal within the time allowed under the Ground Leases triggers the consequence set forth in Section 2.03(2) of Lease No. B-206 and Section 2.03(b) of Lease No. B-224—that WDC's failure is deemed equivalent to adopting the appraisal submitted by Self Storage—and that Self Storage's appraised value of $34,300,000 constitutes the binding purchase price.

D. A declaration that Self Storage is entitled to continued possession and need not surrender the improvements of the Leased Premises until WDC tenders the full purchase price or the contractually permitted 30% down payment with a conforming promissory note, pursuant to the 2015 Amendments and § 2.03 of the Ground Leases.

E. In the alternative, a declaration that, to the extent the Section 2.02 notice deadlines expire before WDC provides its appraisal reports, WDC is estopped from asserting those deadlines have lapsed and Self Storage retains the right to exercise the extension option for a reasonable period after WDC provides its appraisal reports.

F. An order compelling WDC to produce its complete appraisal report(s) and to participate in and complete the § 2.03 appraisal process.

G. An order requiring WDC to purchase the Leased Premises at the price determined in accordance with § 2.03, with payment and closing on terms consistent with the Ground Leases.

H. If WDC fails or refuses to participate in the appraisal process, an order deeming Self Storage's $34,300,000 appraised value to be the binding purchase price.

I. An award of damages equal to the full purchase price as determined through the Section 2.03 appraisal process, which Self Storage's appraisal estimate at $34,300,000.

J. Interest at the rate of ten percent (10%) per annum on all sums due and unpaid, as provided under § 17.12 of Lease No. B-206 and § 16.12 of Lease No. B-224;

K. Reasonable attorney's fees and costs incurred in this proceeding, as provided under § 17.11 of Lease No. B-206 and § 16.11 of Lease No. B-224, which provide that "[i]n the event either Lessor or Lessee shall bring any action or proceeding for damages for an alleged breach of any provision of this Lease, including, but not limited to arbitration, to recover rents, or to enforce, protect, or establish any right or remedy of either party, the prevailing party shall be entitled to recover as a part of such action or proceeding reasonable attorney's fees and court costs."

L. Such other and further relief as the arbitration panel deems just and appropriate.

SNELL & WILMER

DATED this 5th day of June, 2026.

SNELL & WILMER L.L.P.

By: */s/ Paloma Scheiferstein*
Edward J. Hermes
Alexander L. Fugazzi
Paloma M. Scheiferstein
1700 South Pavilion Center Drive
Suite 700
Las Vegas, Nevada 89135

*Attorneys for Claimants Carson Valley/ Tahoe Self Storage, LLC and Hobo Hot Springs Self Storage, LLC*

SNELL & WILMER